**In the Matter of Marc A. LANSKY.**

**No. 02S00–9510–DI–1126.**

Supreme Court of Indiana.

April 4, 1997.

Ronald E. Elberger, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Dennis K. McKinney, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

■ Today we find that a lawyer's employment agreement with a client which anticipates charging an unreasonable fee for legal services and which improperly attempts to limit the client's decision-making authority violates the *Rules of Professional Conduct for Attorneys at Law.*

After being formally charged with violating the *Rules of Professional Conduct,* the respondent and the Commission agreed on a proposed settlement, pursuant to which the respondent now admits misconduct and agrees to be suspended from the practice of law in this state for thirty days. That agreement is now before this Court for final approval. Ind.Admission and Discipline Rule 23(11)(c). We have jurisdiction of this matter by virtue of the respondent's admission to the bar of this state in 1959.

The parties do not dispute the facts. In September 1993, a client sought the respondent's representation in a personal injury action. The client and her husband signed a typewritten retainer agreement which provided the respondent with a contingency fee of 40% of the client's gross recovery before suit was filed. Contained in the agreement was the following provision:

(I) (We) hereby agree that as a condition precedent to a termination of this agreement and prior to any final release of said attorney from this case, or a final conclusion of attorney's services prior to the conclusion of this case, that said attorney shall be entitled to 40% [the initials of the client and her husband precede the numeral] of any total gross recovery, or (I) (We) shall pay said attorney a fee for his services in the amount of One Hundred and Fifty Dollars ($150.00) per hour based on said attorney's records of services rendered, together with all expenses advanced by said attorney, or a combination of all of the above approved in writing by said attorney and (myself) (ourselves) at said attorney's option.

In addition, the agreement contained the following handwritten provision: "We hereby authorize our attorney to settle this matter for any amount he determines is reasonable without further oral or written authorization."

In a handwritten note dated October 12, 1993, the client informed the respondent that she no longer needed his services for her personal injury case or for any other case for which she may have retained him. She called his office that same day and reiterated the message. On October 13, 1993, the client visited the office of another lawyer (the "lawyer") to discuss the prospects of the lawyer representing her in the personal injury action. By letter dated October 15, 1993, the lawyer informed the respondent that the client had retained him and requested that the respondent forward any documents and photographs relative to the case. The lawyer also informed the respondent that the respondent would be paid after settlement of the client's claim if the respondent provided the lawyer a bill for his services. The respondent's written response to the lawyer stated:

Please be advised that the [clients] have signed a retainer with me providing for 40% of any recovery if they decide to switch attorneys or for my time and advances which amount to $1,404.29 to this point, either alternative at my choice.

You are also notified that [client] advised me of you reviewing with her in detail about this case knowing full well that she was represented by other counsel, and advising her of your desire to represent her. You are fully aware that this is unethical practice.

In the event that I do not have a letter delivered from you prior to Friday, October 22, 1993 notifying [clients] that you have no intention of representing them, my letter of complaint to the Indiana State Bar Association will be forthcoming in regard to your irreprehensible [sic] and unethical practice.

The lawyer later informed the respondent that he would not withdraw from representing the client. The respondent failed to provide the lawyer with the requested photographs. He did, however, provide the client with an "itemized billing" which included

charges for work on the case after his discharge. Specifically, the respondent charged his former client for time spent making telephone calls and writing letters to the lawyer and the client concerning his discharge, the respondent's time and effort in arranging to place a lien on the client's settlement, and the time he spent reviewing and responding to the grievance filed by the client with the Disciplinary Commission.

Indiana Professional Conduct Rule 1.5(a) requires that lawyers' fees be "reasonable." The rule contains a list of factors to be considered when determining whether a given fee is reasonable, among them the time and labor required and the results obtained. Ind.Professional Conduct Rule 1.5(a)(1), (4). The respondent's fee agreement, at his option, called for his retention of 40% of the client's gross recovery, even if she discharged him prior to resolution of the case. A client has the right to discharge a lawyer at any time, with or without cause, subject to liability for payment of the lawyer's services. *Comment* to Prof.Cond.R. 1.16. A lawyer who is discharged, with or without cause, may recover the reasonable value of services provided to the client before discharge on the basis of *quantum meruit. Kelly v. Smith,* 611 N.E.2d 118 (Ind.1993); *Jennings v. Backmeyer,* 569 N.E.2d 689 (Ind.Ct.App. 1991). However, the respondent anticipated charging a fee beyond the reasonable value of services provided by contracting to retain 40% of any gross recovery as a "condition precedent" to termination of the agreement prior to resolution of the case. Further, the respondent charged the client for services rendered after he was discharged. Although it is permissible for a lawyer to charge a client for services rendered prior to discharge, it is not permissible for a lawyer to charge a client for services rendered after discharge as the respondent did in this case. We therefore find that respondent violated Prof.Cond.R. 1.5(a) by charging his client an unreasonable fee.

█ Professional Conduct Rule 8.4(a) provides that it is professional misconduct for a lawyer to violate or attempt to violate the *Rules of Professional Conduct.* By charging the client an unreasonable fee, the respondent violated Prof.Cond.R. 8.4(a).

█ By failing to provide the client's successor counsel with the photographs relative to the personal injury action as well as charging her for work done after he was discharged, the respondent violated Prof. Cond.R. 1.16(d), which requires lawyers to take steps to the extent reasonably practicable to protect a client's interests upon termination of representation. Professional Conduct Rule 1.2(a) provides, *inter alia,* that a lawyer shall abide by his client's decision whether to accept an offer of settlement. By including in the fee agreement a provision by which the client gave up her right to decide whether to accept an offer of settlement, the respondent violated Prof.Cond.R. 1.2(a).

█ The parties' agreed resolution of this disciplinary case contains several factors they contend mitigate the severity of the misconduct. Among them are that, during negotiation of the fee agreement, the client informed the respondent that she did not want her case to go to trial, preferring instead to settle the matter. She authorized the respondent to "use his discretion to secure settlement offers." Consistent with Prof.Cond.R. 1.2(a), the respondent orally informed the client that he would advise her of the terms of any settlement offers prior to formal acceptance or rejection. He acknowledged that haste and unartful draftsmanship contributed to the offending provision's inclusion in the written fee agreement. He has since revised his fee agreements to conform with applicable strictures. The parties also state that the respondent inadvertently billed the client for work done after his discharge. The error, they agree, grew out of the respondent's failure to review the billing statement before forwarding it to the client.

██ The practice of law is more than a mere vocation undertaken for profit. A lawyer has a duty to protect and preserve the rights and property of a client. *Landau v. Bailey,* 629 N.E.2d 264 (Ind.Ct.App.1994). A fiduciary relationship exists between a lawyer and client, and the confidence which the relationship begets between the parties makes it necessary for the lawyer to act in

utmost good faith. *Sanders v. Townsend,* 582 N.E.2d 355 (Ind.1991). The respondent breached his fiduciary obligation to a client by seeking to limit her control over basic aspects of her case. In light of the abuses of the lawyer-client relationship which occurred in this case, we are satisfied that the respondent's misconduct warrants suspension and thus accept the parties' tendered agreement.

It is, therefore, ordered that the respondent, Marc A. Lansky, be suspended from the practice of law for a period of thirty (30) days, beginning May 9, 1997. At the conclusion of that period, he will be automatically reinstated, subject to the provisions of Admis.Disc.R. 23(4)(c).

The Clerk of this Court is directed to give notice of this action pursuant to Admis.Disc.R. 23, Section 3(d) and to provide to the clerk of the United States Court of Appeals for the Seventh Circuit, to the clerk of each of the Federal District Courts in this state, and to the clerk of the United States Bankruptcy Court in this state the respondent's last known address as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.