**Michael J. GALANIS, Appellant–Cross Defendant,**

v.

**LYONS & TRUITT, Appellee–Plaintiff,**

and

**Suzanne Brown, Appellee–Defendant/Cross–Claimant.**

**No. 64A03–9704–CV–115.**

Court of Appeals of Indiana.

Aug. 20, 1998.

Rehearing Denied Oct. 15, 1998.

Tammy C. Wilson, Golding & Wilson, Chesterton, for Appellant–Cross Defendant.

James L. Sullivan, Lyons, Sullivan & Brooks, Valparaiso, for Appellee–Plaintiff.

Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, for Appellee–Defendant/Cross–Claimant.

## OPINION

HOFFMAN, Judge.

This cause concerns the payment of legal fees earned when an attorney is dismissed by his client prior to the completion of his services. Appellee-plaintiff Lyons and Truitt, the predecessor law firm, brought a complaint for declaratory judgment against appellee-defendant Suzanne Brown and appellant/cross-defendant Michael Galanis, the successor attorney, to determine whether Brown was responsible for paying both the law firm and Galanis in the amount called for in each contingent fee agreement. Galanis appeals the trial court's declaratory judgment ruling which ordered him, not Brown, to pay the attorney's fees due Lyons & Truitt. The facts relevant to appeal are found below.

On September 7, 1988, Brown sustained injuries as the result of an automobile accident. Eventually, Brown sought legal assistance and retained Russell A. Willis, Jr. to represent her for her personal injuries. However, in January of 1990, a conflict of interest arose and Willis withdrew from the case.

Willis referred Brown to Terry E. Johnston who became Brown's second attorney. Johnston was discharged by Brown, however, because he failed to return any of Brown's telephone calls.

Brown then contacted Robert Truitt, of the law firm Lyons & Truitt (hereinafter referred to as the "Firm"), to represent her in the matter. Brown subsequently entered into a contingent fee agreement with the Firm. In July of 1993, Truitt was appointed as trial judge in the Porter Superior Court. Although Truitt sent a letter to Brown stating that he would have to withdraw from the case due to his judicial appointment, Truitt's firm [1] continued to represent Brown in the matter. Eventually, however, Brown discharged the Firm.

Thereafter, Brown contacted Galanis and retained him as her attorney. Brown also signed a contingent fee agreement whereby Galanis would receive 40% of the gross amount recovered from the filing of the lawsuit.

■ Brown's cause of action went to trial November 29, 1993. At the conclusion of the trial, Brown received a judgment of $250,000. However, the judgment was settled for $200,000. In April of 1994, the Firm sent an itemized list of expenses to Galanis which contained the Firm's hours of representation in Brown's cause, and requested fees in the amount of the reasonable value of their services based on quantum meruit.[2]

After receiving the request, Galanis sent a letter to Brown which stated in pertinent part: "I will be transmitting to [the Firm], on your behalf a check for $4,000.00, as per your instructions." Galanis then sent a letter to the Firm stating that he was transferring a check in the amount of $4,000 "as full and final payment and settlement of all prior

---

1. After Robert Truitt's appointment to the judiciary, the firm of Lyons & Truitt became known as Lyons and Sullivan.

2. Quantum meruit as amount of recovery means "as much as deserved" and measures recovery under implied contract to pay compensation as reasonable value of services rendered. Black's Law Dictionary 1243 (6th Ed.1990). The term

has come to be identified with quasi contract, or a contract implied in law, where there is no contract in the true sense but where, to avoid an unjust enrichment, the courts permit recovery of the value of the services rendered just as if there had been a true contract. *Matter of Estate of Carroll*, 436 N.E.2d 864, 866 (Ind.Ct.App.1982).

attorney's liens on [Brown's cause of action], which is being transmitted to you on behalf of my client, Suzanne Brown, and at her direction and request." The letter further stated that:

> If your office has any questions or problems with the enclosed payment, I would suggest that you bring the matter up with Suzanne Brown, directly. Naturally, I will do what I can to assist in this transaction, but the issue of your office's bill is strictly between yourself and Suzanne Brown, and I can only do what I am directed to do by my client, which is to transmit the enclosed payment in satisfaction of your lien.

The Firm responded by letter requesting that Galanis transmit to the Firm ⅓ of the total attorney's fees as "a fair, quantum meruit representation of our interest in the attorney's fees in this case." Galanis replied by letter that the Firm's remedy was not a percentage fee splitting, but was based upon a quantum meruit basis. Galanis further stated that any disputes regarding the attorney's fees owed should be addressed to Brown.

On December 8, 1995, the Firm filed a complaint for declaratory judgment against Brown, and Brown as defendant/cross-claimant against cross-defendant Galanis. The complaint requested the trial court determine 1) whether Brown was personally responsible for paying both the Firm and Galanis the amount called for in each contingent fee agreement; and 2) whether the Firm is entitled to quantum meruit compensation for its services rendered, or the contract fee agreed to through the contingent fee agreement with Brown.

On November 8, 1996, the trial court entered its order determining that "after reading the briefs of the parties, reading the authorities cited in the briefs and being duly advised in the premises, ... the responsibility for payment of attorney fees due [the Firm] belongs to Galanis." The trial court further determined that the Firm "should only receive as compensation a fee commensurate with the hourly rate charged by an attorney in similar cases." Galanis now appeals the trial court's determination.

Galanis' appeal raises one issue for our review which we restate as follows: whether the trial court erred in determining that Galanis was responsible for paying the Firm's attorney's fees. In its brief, the Firm raises the following additional issue: whether the trial court erred in determining that the Firm is entitled to attorney's fees commensurate with the theory of quantum meruit.

In the interest of clarity, we address first the Firm's issue: whether the trial court's determination that the Firm was entitled to quantum meruit compensation was error. Here, there is evidence in the record that Brown entered into a contingent fee agreement with Truitt. However, the record does not contain the actual agreement itself, nor are the terms of the contingent fee agreement set forth. The only evidence concerning attorney's fees provided by the Firm was an itemized list of expenses stating that Truitt and the Firm had expended 62.2 hours on Brown's case.

■ A "contingent fee" is defined as "an [a]rrangement between attorney and client whereby attorney agrees to represent client with compensation to be a percentage of the amount recovered[.]" Black's Law Dictionary 614 (6th Ed.1990). A true contingent fee has two components: (1) payment is contingent on the outcome, and (2) the fee is a percentage deducted from the client's recovery. *Valparaiso Tech. Inst. v. Porter Co. Tr.,* 676 N.E.2d 416, 420 (Ind.Ct.App.1997).

■ Ind. Professional Conduct Rule 1.5 addresses contingent fees and states in pertinent part:

> A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

Prof. Cond. R. 1.5(c). An agreement for a contingent fee can never be implied. *Waxman Industries v. Trustco Development Co.,* 455 N.E.2d 376, 381 (Ind.Ct.App.1983). It,

instead, must be a matter expressly contracted between the attorney and his client prior to the service performed. *Id.* Otherwise, the attorney is entitled to a reasonable fee. *Id.*

■ Although the Firm was unable to produce the contingent fee agreement between Truitt and Brown, the Firm did provide the itemized list stating that 62.2 hours had been spent on Brown's case. Because the contingent fee was not in writing, the Firm should not be permitted to recover a percentage of Brown's recovery to satisfy the fee obligation. However, because the Firm did spend many hours preparing Brown's case, the Firm is entitled to compensation.

In *Landis v. Brooks,* 637 N.E.2d 1365 (Ind. Ct.App.1994), *trans. denied,* the client retained the attorney to represent her in post-dissolution matters. The client paid the attorney a $2,000 retainer and orally agreed to pay the attorney $135 per hour. The client also executed an Acknowledgment and Assignment, which was drafted by the attorney, acknowledging that she had paid a retainer, that she owed her attorney additional attorney's fees, and that she was responsible for paying the fees at a rate of $135 per hour. The document also assigned to the attorney the client's right to receive any distribution for the estate of her deceased mother which was being probated. The attorney eventually filed an objection to the final accounting of the estate because it did not include a disbursement to him. The trial court subsequently found that the attorney's $15,000 claim for attorney's fees was unreasonable and, instead, reduced his award to $7,342.11.

The attorney appealed the trial court's order. Upon review of his claim, this Court determined that a dispute over the reasonableness of attorney's fees must be resolved pursuant to the attorney's agreement with the client, and not under principles of quantum meruit, *if the agreement sets forth an hourly rate to compensate the attorney and if the attorney seeks fees based on the number of hours worked. Landis,* 637 N.E.2d at 1367 (emphasis added).

By contrast, in *Estate of Forrester v. Dawalt,* 562 N.E.2d 1315 (Ind.Ct.App.1990), we determined that principles of quantum meru-

it were the best way to determine the reasonable value of an attorney's services when he is discharged. *Id.* at 1317–18. However, *Forrester* involved an oral agreement between the attorney and the client whereby the client agreed to pay the attorney a $15,-000 fixed fee which would come out of the estate the attorney was retained to administer.

This Court found that holding the estate liable for the entire $15,000, when the attorney had been discharged before the services had been completed and before the attorney had earned the total fee agreed to, would impose a chilling effect upon the estate's right to freely discharge its attorney. *Id.* at 1317. Because there was no agreement between the attorney and client as to the fee to be paid for less than the complete services anticipated, this Court applied quantum meruit principles to determine a reasonable fee for the attorney. *See Forrester,* 562 N.E.2d 1315.

Here, the Firm was unable to produce the contingent fee agreement that Brown and Truitt allegedly entered. Neither did the Firm provide the trial court with an agreement between Brown and Truitt stating that Brown would be responsible for paying the Firm's fees at a particular hourly rate. Furthermore, there was no agreement in place as to the fee to be paid if Truitt's services were not completed as anticipated.

Upon termination, the Firm was entitled to recover the value of its services. However, we find that because no written agreement existed between Brown and Truitt, the Firm is entitled only to the reasonable value of Truitt's services rendered before discharge under the theory of quantum meruit. We find that this rule strikes the proper balance by providing clients freedom in substituting counsel, prohibiting clients from being held responsible for attorney's fees not previously agreed to, and protecting an attorney's right to be compensated for services rendered. The Firm was discharged and, under the rule enunciated here, was entitled to the reasonable value of its services rendered according to quantum meruit principles. The trial court did not err in so determining.

We next address the issues raised by Galanis. In his brief, Galanis argues that the trial court erred in finding him responsible for paying the Firm's attorney's fees. He claims that under Indiana law, the client is liable for the reasonable value of services performed on her behalf by her attorney. Thus, according to Galanis, Brown should be held individually liable to compensate her former attorney for the reasonable value of his services.

Here, the evidence reveals that Robert Truitt and Galanis met so that Truitt could provide Galanis with Brown's file. However, during that meeting, neither attorney discussed how Truitt and the Firm would be compensated for the services rendered prior to discharge. Galanis subsequently represented Brown at trial and obtained a $200,-000 settlement. Of the $200,000 settlement, Galanis retained 40%, pursuant to his contingent fee agreement with Brown, as well as an additional 10% to cover expenses for a possible appeal.

■ It is well-settled that a client may discharge an attorney or law firm at any time, with or without cause, subject to liability for payment of the legal services. *Matter of Lansky*, 678 N.E.2d 1114, 1116 (Ind.1997); Comment to Ind. Professional Conduct Rule 1.16. A lawyer who is discharged, with or without cause, may recover the reasonable value of services provided to the client before discharge on the basis of quantum meruit. *Id.*

■ Endemic in the attorney-client relationship is trust and confidence between the client and the attorney. *Forrester*, 562 N.E.2d at 1317 (quoting *Fox & Associates Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 71–72, 541 N.E.2d 448, 450 (1989)) [3]. Also inherent in this relationship is the fact that the client must rely almost entirely upon the good faith of the attorney who alone can make an informed estimate of the value of the client's legal right and of the expense and effort necessary to enforce it. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 111 (La.1978). Therefore, the attorney is in the best position to determine the reasonable attorney's fees for any given cause of action.

■ A client generally has little or no experience with the fee charges of attorneys. It naturally follows that for the right to discharge to be of any value, the client must not be forced to risk paying for services not rendered or an amount of attorney's fees greater than that to which the client agreed. Requiring a client to provide compensation under such circumstances would have a chilling effect upon the client's right to freely discharge her attorney. *See Forrester*, 562 N.E.2d at 1317. Furthermore, this Court views unenforceable any contractual fee provision which constrains a client from exercising her right to freely discharge her attorney. *Forrester*, 562 N.E.2d at 1317 (quoting *Jacobson v. Sassower*, 122 Misc.2d 863, 865–67, 474 N.Y.S.2d 167, 169 (1983)).

■ Here, Brown retained Truitt to represent her in her personal injury action. However, the record reveals that no tangible, written fee agreement exists between Brown and Truitt. Brown subsequently discharged Truitt and the Firm, and retained Galanis to represent her in the matter. Brown then entered into a written contingent fee agreement with Galanis and agreed to pay Galanis 40% of the gross amount recovered from her claim. Although no written fee agreement exists between Brown and Truitt, the Firm produced an itemization of services listing the 62.2 hours of work Truitt put into the case. Though the Firm is entitled to compensation for services rendered, given the circumstances of this case we do not find that Brown is responsible for the Firm's attorney's fees.

■ When Truitt met with Galanis to transfer Brown's case to him, the two failed to discuss how Truitt would be compensated for the services rendered before he and his firm were discharged. As such, no fee agreement existed between Truitt and Galanis, and as previously determined, no tangible fee agreement existed between Truitt and Brown. Any fee arrangement should be the duty of the attorney as he or she has the

---

**3.** Although this Court is not bound by the decisions of foreign jurisdictions, where no Indiana cases have addressed the issue, decisions of other states are instructive.

most experience in determining such matters. As soon as possible, after an attorney has been retained, he or she should reach a clear agreement with the client as to the basis of the charges to be made. The fee arrangement should then be reduced to writing, especially when the agreement is contingent. Prof. Cond. R. 1.5(b).

Here, Truitt failed to execute a written fee agreement between himself and Brown, and Galanis and Truitt failed to execute an agreement as to how the Firm would be compensated for the 62.2 hours of work put into Brown's case. As such, the attorney's fees Brown owed to Truitt were not properly set forth in the manner provided by the Indiana Rules of Professional Conduct, and Brown was not properly apprised of the fee she would be required to pay for Truitt's partial services. Although the Firm is entitled to compensation, to hold Brown responsible for the Firm's attorney's fees under such circumstances would undermine public policy by imposing a chilling affect upon her right to discharge one attorney and retain the services of another.

We therefore hold that the Firm is entitled only to the reasonable value of its services rendered before discharge under the theory of quantum meruit, and that Galanis is responsible for the payment of the Firm's reasonable attorney's ·fees. The judgment of the trial court is affirmed.

Affirmed.

GARRARD, J., concurs.

STATON, J., dissents.

STATON, Judge, dissenting.

I dissent. Regarding the amount Lyons & Truitt is to recover, I agree with the majority that the Firm is entitled to the reasonable value of the services Truitt rendered under the theory of *quantum meruit. Kelly v. Smith,* 611 N.E.2d 118, 122 (Ind.1993); *Estate of Forrester v. Dawalt,* 562 N.E.2d 1315, 1317–18 (Ind.Ct.App.1990), *reh. denied.* The trial court determined that reasonable attorney's fees in this case equal "the hourly rate of a community attorney charging for similar services." Recognizing that the trial court considers many factors in determining a rea-

sonable fee, I nevertheless concur in the majority's affirmance of that determination.

I depart, however, from the majority's statement that recovery on the basis of *quantum meruit* is appropriate because the contingent fee was not in writing. Op. at 371 and 372–73. The majority suggests that, if the contingent fee contract had been written rather than oral, the Firm would be entitled to a percentage of the recovery ultimately obtained by Galanis. I cannot agree. The proper recovery does not turn on whether the unfulfilled contingent fee contract is written or oral. In either case, the attorney is entitled to receive the reasonable value of the services rendered.

I also dissent from the majority's holding that Galanis is responsible for fees due the Firm. Liability for legal services is essentially a matter of contract. *Estate of Anderson v. Smith,* 161 Ind.App. 480, 316 N.E.2d 592, 594 (1974). I agree that the attorney and the client should reach a clear agreement regarding fees as soon as possible. If the contract involves a contingent fee, it "shall" be reduced to writing and

> shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

Ind. Professional Conduct Rule 1.5(c). A prudent attorney would also contract with the client, in writing, concerning the client's financial obligation upon the attorney's discharge or withdrawal. Without specific terms addressing this obligation, the client who has entered into a contract which states the attorney is paid only when there is a recovery must resort to speculation, an unnecessary risk.

Here, Brown hired Galanis to bring her case to settlement or trial. Galanis agreed to do so for a contingent fee of 40%, and Brown voluntarily acquiesced. After trial and compromise, Galanis successfully reduced Brown's claim to $200,000 for which he was to receive $80,000. The trial court did not

specifically find the fee arrangement unreasonable.

Notably, the contract between Brown and Galanis did not provide Galanis would pay Brown's obligation to Truitt, her former attorney. Likewise, there was no agreement, express or implied, between Galanis and either Truitt or the Firm regarding a division of fees. Nor is Galanis' subsequent representation of Brown the type of arrangement contemplated by Indiana Professional Conduct Rule 1.5(e) where cooperating attorneys enter into a fee-sharing arrangement.[4]

Under the rule enunciated by the majority, when contracting for his or her own employment, successor counsel must now negotiate contingent fee agreements taking into account the contracts of the client and all former attorneys who have worked on the case, whether or not the services rendered by the former attorneys are valuable to present counsel. This is unworkable.

For the above reasons, I would adhere to the common law rule that makes a client liable for the reasonable value of services performed on her behalf by her attorney and, thus, hold that Brown is responsible for Truitt's fee. Accordingly, I would affirm the amount of attorney's fees awarded but would reverse the trial court's decision to hold Galanis responsible for those fees.

---

4. Prof. Cond. R. 1.5(e) provides:

A division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

Comment following the rule explains:

A division of fee is a *single billing to a client* covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates *association of more than one lawyer*

in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Paragraph (e) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does not require disclosure to the client of the share that each lawyer *is to receive.* Joint responsibility for the representation entails the obligations stated in Rule 5.1 ["Responsibilities of a Partner or Supervisory Lawyer"] for purposes of the matter involved. (Emphasis added).