**Michael J. GALANIS, Appellant (Cross Defendant Below),**

v.

**LYONS & TRUITT, Appellee (Plaintiff Below),**

and

**Suzanne Brown, Appellee (Defendant/Cross– Claimant Below).**

No. 64S03–9904–CV–231.

Supreme Court of Indiana.

Sept. 8, 1999.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Indianapolis, Indiana, Tammy C. Wilson, Chesterton, Indiana, Attorneys for Appellant.

Thomas F. Macke, Valparaiso, Indiana, Attorney for Appellee Suzanne Brown.

James L. Sullivan, Valparaiso, Indiana, Attorney for Appellee Lyons & Truitt.

## ON PETITION TO TRANSFER

BOEHM, Justice.

We hold that in the absence of express written fee agreements providing otherwise (1) a lawyer retained under a contingent fee contract but discharged prior to the contingency is entitled to recover the value of services rendered if there is a subsequent settlement or award; (2) the fee is to be measured by the proportion of the total fee equal to the contribution of the discharged lawyer's efforts to the ultimate result; and (3) a subsequent lawyer under a contingent fee agreement who knew of the previous lawyer's representation is responsible for paying the predecessor's fee out of the subsequent lawyer's fee. These are default settings the law supplies in the absence of fee agreements providing otherwise and parties and lawyers are not prevented from making other reasonable fee arrangements.

### Factual and Procedural Background

Suzanne Brown was injured in an automobile accident on September 7, 1988. Her first lawyer withdrew because of a conflict of interest and she discharged a second for failure to return phone calls. Brown then retained Robert Truitt of Lyons & Truitt to represent her. Truitt and an associate took several depositions and prepared for trial over the next two and one-half years. When Truitt was appointed to the Porter Superior Court in July of 1993,[1] Brown discharged his firm and retained Michael Galanis. Brown signed a written contingent fee agreement providing that Galanis would receive 40% of the gross amount recovered if the case settled or went to trial plus an additional 10% if the case was appealed. The agreement made no reference to compensating Lyons for its apparently significant role in the case. When Galanis met with Truitt to obtain Brown's file, Truitt explained to Galanis that his firm had taken the case under the ⅓ contingent fee arrangement provided in the written agreement between Brown and her first lawyer.

Approximately four months after Galanis assumed the case, Brown was successful at trial and a jury awarded her $250,000. The case was then settled for $200,000. Shortly after settlement, Lyons sent Galanis an itemized list of its hours worked and expenses incurred on Brown's case, but requested no specific fee. Galanis communicated with Brown and Lyons on several occasions. Ultimately, Brown (through Galanis) offered Lyons $4,000 to settle the fee dispute and Lyons requested ⅓ of ⅓ of the recovery or $22,200. The parties could not reach an agreement.

Nearly two years after its first demand for payment, Lyons filed a complaint for declaratory judgment against Brown requesting that the trial court determine Brown's obligations under the two contingent fee agreements. Brown filed a cross-claim against Galanis asserting that Galanis, not Brown, was responsible for any fee owing to Lyons. Galanis filed a motion for summary judgment as to his exposure for Lyons's fees. The trial court held that Lyons was entitled to a reasonable fee, which was determined to be "commensurate with the hourly rate charged by an attorney in a similar case," and that Galanis was responsible for paying that fee.

Galanis appealed the trial court's holding that he was responsible for paying the fee and Lyons appealed the trial court's ruling on the reasonable value of its services. The Court of Appeals affirmed the trial court, holding that (1) under quantum meruit Lyons is entitled to the reasonable value of its services rendered and (2) Galanis is responsible for paying the Lyons's fees because holding Brown responsible for both would chill her right to discharge her lawyer. It affirmed without discussion the trial court's ruling that Lyons's fee should be "commensurate with" a standard hourly rate. *Galanis v. Lyons & Truitt*, 698 N.E.2d 368 (Ind.Ct. App.1998). We granted Galanis' petition to transfer.

---

[1] After Truitt's departure, the firm became Lyons & Sullivan. For simplicity, "Lyons" is used throughout this opinion.

## I. A Discharged Lawyer is Entitled to the Reasonable Value of Services Rendered

■ "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Indiana Professional Conduct Rule 1.16 comment; *see Matter of Lansky*, 678 N.E.2d 1114, 1116 (Ind.1997); *see also* 7 AM.JUR.2D *Attorneys at Law* § 181 (1997). We assume that an agreement calling for a reasonable method of compensating a discharged lawyer may be enforceable according to its terms. *Cf.* RESTATEMENT (SECOND) OF CONTRACTS § 377 (1981). Here, however, Lyons and Brown had reached no explicit agreement as to whether or how much Lyons was to be compensated if the firm was discharged before a result was known. The conventional rule is that "[a]n attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee." 7 AM.JUR.2D *Attorneys at Law* § 181 (1997); *accord Matter of Lansky*, 678 N.E.2d at 1116; *Kelly v. Smith*, 611 N.E.2d 118, 122 (Ind.1993). As the Court of Appeals observed, "this rule strikes the proper balance by providing clients freedom in substituting counsel, prohibiting clients from being held responsible for attorney's fees not previously agreed to, and protecting an attorney's right to be compensated for services rendered." *Galanis v. Lyons & Truitt*, 698 N.E.2d 368, 372 (Ind.Ct.App.1998).

A corollary of the client's right to discharge a lawyer is that a contract between the client and the lawyer that unduly impairs that right is invalid. 1 GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING § 1.16:201–1 (1990 & Supp.1998). Accordingly, even if an agreement calls for a full contingent fee in the event of discharge, it is likely to be unenforceable. If a client is required to pay the discharged lawyer the fee for the completed project, especially if this is a percentage contingent fee, and then pay a second fee for its completion, the client's right to discharge the lawyer may be too costly to assert. *Id.* at § 1.16:602 n. 2.1 (a client's right to discharge is not much of a right if it would be too costly to assert); *AFLAC, Inc. v. Williams*, 264 Ga. 351, 444 S.E.2d 314, 317 (1994) ("A client should not be deterred from exercising his or her legal right because of economic coercion."). Otherwise stated, holding a client responsible for the entire amount of a contract would chill a client's exercise of the right to discharge a lawyer. *Estate of Forrester*, 562 N.E.2d at 1317; *see also Saucier v. Hayes Dairy Prod., Inc.*, 373 So.2d 102, 116 (La.1978) (the client's absolute right to discharge a lawyer is stripped of effect if the exercise of that right is conditioned upon payment of the full amount specified in the contract). The requirement of Professional Conduct Rule 1.5 that a lawyer's fee be reasonable is also relevant. A full contingency for partial completion overcompensates the discharged lawyer by giving a full contingent fee for less than a full work load.

Similarly, however, allowing a full contingency to a successor may be unreasonable. If the former lawyer has contributed significantly to the result but the successor receives a full contingent fee, either the first lawyer remains uncompensated for that contribution or the client pays more than a full contingent fee. In either case, the successor gets a windfall in the form of being relieved of the effort contributed by the first lawyer but nonetheless receives a full contingent fee. None of these results is the desired default setting the law should provide in the absence of a contract spelling out exactly who pays how much under these circumstances.

## II. Determining the Reasonable Value of the First Lawyer's Services

■ Quantum meruit is an equitable doctrine that prevents unjust enrichment by permitting one to recover the "value of work performed or material furnished if used" by another and if valuable. 17A C.J.S. *Contracts* § 440 at 553 (1963). Where there is a successor lawyer, the benefit the client received from the predecessor's work is either retained by the client in the form of obtaining a more favorable fee agreement, or it is transferred to the successor in the form of

relieving the successor of the need to expend the same effort. As applied to this case, if Lyons is not compensated for the useful work it performed on Brown's case, either Brown or Galanis is unjustly enriched. The dollar value to offset the unjust enrichment is based on the value conferred on the client, not the effort expended by the lawyer, although the two may be the same in many instances.

■ Arriving at the proper number to place on the predecessor's services is ultimately a factual determination for the trial court. The trial court in this case held that the "reasonable value" of Lyons's work should be determined "commensurate with the hourly rate of a community attorney charging for similar services." Judge Staton, dissenting in the Court of Appeals in this case, read this as requiring a fee "equal [to] 'the hourly rate of a community attorney....'" *Galanis v. Lyons & Truitt*, 698 N.E.2d 368, 374 (Ind.Ct.App.1998) (Staton, J., dissenting). The parties apparently make the same assumption. Lyons challenges this method of calculating the reasonable value of the firm's work. If a fee agreement provides for an hourly rate in the event of a pre-contingency termination, it is presumptively enforceable, subject to the ordinary requirement of reasonableness. *See* Indiana Professional Conduct Rule 1.5. We agree with Lyons that, in the absence of such an agreement, the value of a discharged lawyer's work on a case is not always equal to a standard rate multiplied by the number of hours of work on the case. Where the lawyers have agreed to work on contingent fees and there is no contractual provision governing payment in the event of discharge, compensating the predecessor lawyer on a standard hourly fee could produce either too little or too much, depending on how the total hourly efforts of all lawyers compare to the contingent fee.

To illustrate the point, consider the lawyer who is terminated (or dies) while the jury is deliberating before returning a verdict that produces a contingent fee that is twice the hourly rate for the work expended. Where the successor is needed only to defend an appeal, it would be quite unreasonable to measure the discharged lawyer's contribution solely by the number of hours multiplied by a standard rate. The first lawyer accepted the risk of a loss and the second boarded the train when victory was in sight and when at least some recovery by a negotiated settlement was a high probability. At the other end of the spectrum, one can easily imagine scenarios where the predecessor has generated a vast amount of hourly charges but accomplished little or nothing, leaving the entire case development to the successor.

■ In the context of valuing a terminated predecessor's services, as is generally true, "[i]n determining the reasonable value of the legal services rendered, the time expended by the attorney alone is not a controlling factor. Among other things, consideration may be given to the general quality of the effort expended by the attorney." *Kizer v. Davis*, 174 Ind.App. 559, 369 N.E.2d 439, 446 n. 9 (1977) (citation omitted). In this context, because both lawyers in this scenario accepted the risk of failure, in addition to the quality of work, each is entitled to consideration of that risk in determining the fair value of his services. Prof. Cond. R. 1.5(a)(8). And, because the underlying theory of payment is quantum meruit, if there is no fault to be attributed to either the client or the lawyer, as seems to be the case here, the measure of the benefit conferred is what is received by the client, not what is expended by the lawyer. *Cf.* RESTATEMENT OF RESTITUTION § 155 (1937). That amount is the portion of contingent fee equal to the total effort expended to achieve the contingency that is attributable to the predecessor's work. Nonetheless, we agree that the relative amount of hourly time charges incurred by the predecessor and successor, adjusted for any unproductive or unnecessary efforts by either, is a likely candidate as a presumptive measure of the relative contribution of the two lawyers. If both lawyers agree that the time spent by each was productive, that will provide an easy resolution of the issue.

We are uncertain whether the trial court intended to award Lyons a fee equal to the hourly charges for the work performed or whether it was merely recognizing, as we do, that the relative hourly charges of the law-

yers are relevant to apportioning the contingent fee. If the fee was to be equal to the time charges, it is unclear whether the trial court thought this was a required formula, or whether the same amount was determined to be a fair evaluation of Lyons' contribution in light of all relevant factors. Adherence to time charges is not required, but the latter determination by the trial court would be within its discretion in arriving at a reasonable fee. Remand to the trial court is required for a determination of the value of Lyons's contribution to Brown's case if the lawyers are unable to reach an agreement in light of this opinion.

### III. Who Pays the First Lawyer's Fee

■ The next inquiry is who is responsible for paying Lyons's fee—Galanis or Brown—in the absence of any agreement on that point. Galanis argues that Lyons may recover its fee from Brown but not from him because in Indiana "parties pay their own fees." This may be true as a general matter in cases where the dispute is between two opposing parties. However, in this case, all agree that Brown has incurred a fee for her case in the form of at least a 40% contingent fee to Galanis.[2] We agree with and adopt for Indiana the Louisiana Supreme Court's approach to fees for successive lawyers employed under contingent fee contracts.

> [O]nly one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed [and] ... that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question. . . .

*Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La.1979). The fee should be apportioned according to the respective services and contributions of the lawyers based on the work each performed. *Id.*

■ In a system of professional responsibility that stresses clients' rights, it is incumbent upon the lawyer who enters a contingent fee contract with knowledge of a previous lawyer's work to explain fully any obligation of the client to pay a previous lawyer and explicitly contract away liability for those fees. If this is not done the successor assumes the obligation to pay the first lawyer's fee out of his or her contingent fee. Galanis was in the best position to evaluate and to reach an agreement as to a reasonable fee for the value of the work already done in Brown's case. "Lawyers almost always possess the more sophisticated understanding of fee arrangements. It is therefore appropriate to place the balance of the burden of fair dealing and the allotment of risk in the hands of the lawyer in regard to fee arrangements with clients." *In the Matter of Myers*, 663 N.E.2d 771, 774–75 (Ind.1996). Galanis also had the option to discuss with Brown the need for someone to pay Lyons's fee and to refuse to accept the case if Brown could not resolve any open issues with Lyons. He neither advised her of the need to pay the fee nor contracted away that responsibility for himself. Under these circumstances, Galanis, not Brown, should bear the burden of his silence. Accordingly, Lyons is entitled to recover the compensation due it from Galanis' contingent fee.

For the same reasons we reject the approach taken by some states that would require the client to pay fees to both lawyers and then attempt to recover the amount paid to the first from the second. *See* 1 GEOFFREY C. HAZARD, JR. & W WILLIAM HODES, THE LAW OF LAWYERING § 1.16:602 n. 7 (1990 & Supp.1998) (discussing *Plunkett & Cooney P.C. v. Capitol Bancorp Ltd.*, 212 Mich.App. 325, 536 N.W.2d 886 (1995)). Lawyers, as professionals, should be able to resolve these issues by agreement. If they cannot, they, not the client, should bear the cost of resolving a dispute over their relative contributions.

---

**2.** Galanis apparently contends that he is entitled to a 50% contingent fee but Brown disputes that. The status of this dispute is not clear on this record. In his motion for summary judgment, Galanis argued that he was entitled to a 50% fee because filing a motion to correct error is "deemed" to be an appeal. In his brief on transfer, however, he states that his fee is 40%. Brown's briefs contain similar inconsistencies. She states that Galanis withheld 50% of the settlement as a fee in her brief to the Court of Appeals but in her brief in opposition to transfer she stated that Galanis withheld 40% of the settlement as a fee.

## Conclusion

There are a number of factors that are relevant to a fair resolution of these issues, including whether the predecessor's compensation is contingent on the ultimate result, whether the predecessor's efforts served to reduce the work necessary to bring the case to conclusion, whether the efforts of each lawyer were reasonably efficient, and presumably many others. We assume that the vast majority of these fee arrangements are and should be resolved by agreement between the affected lawyers with appropriate deference to the assumption that each lawyer handled the case efficiently and productively. If not, finding the proper allocation of these contributions is the sort of fact issue trial courts resolve on a daily basis. To the extent an agreement cannot be reached, lawyers, like any other litigants, may take their factual dispute to a trial court. And, like any other litigant, if they do not spell out the arrangement in a written agreement, they take their chances on the deal the trial court will cut for them. Here, for the reasons given, the subsequent lawyer's fee, not the client, should be the source of payment of the predecessor.

The decision of the trial court is affirmed in part. This case is remanded for proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.