**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 27 2014, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**PETER A. SCHROEDER**
Norris Choplin Schroeder LLP
Indianapolis, Indiana

**BRYAN H. BABB**
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES R. FISHER**
**DEBRA H. MILLER**
Miller & Fisher, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| COHEN & MALAD, LLP, | ) | |
| | ) | |
|     Appellant-Plaintiff/Counterclaim | ) | |
|     Defendant | ) | |
| | ) | |
|         vs. | ) | No.  29A02-1308-PL-741 |
| | ) | |
| JOHN P. DALY, JR., GOLITKO & | ) | |
| DALY, P.C. and GOLITKO LEGAL | ) | |
| GROUP, P.C., | ) | |
| | ) | |
|     Appellees-Defendants/ | ) | |
|     Counterclaim Plaintiffs. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-1105-PL-6478

**August 27, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, faced with a situation in which appellant-defendant John Daly took twenty-four cases with him when he left the firm of appellant-plaintiff Cohen & Malad LLP (C&M), we are asked to examine the correct apportionment of attorney fees. C&M appeals the trial court's determination that it was not due quantum meruit compensation from appellee-defendants John Daly Jr., Golitko & Daly, P.C. (Golitko & Daly), and Golitko Legal Group P.C. More particularly, C&M argues that the trial court failed to apply the quantum meruit recovery rule established by <u>Galanis v. Lyons & Truitt</u> and contends that the trial court erred in holding that C&M failed to establish any right of recovery against Golitko & Daly. We find that C&M failed to prove that Daly was unjustly enriched to its detriment and conclude that C&M failed to establish any right of recovery against Golitko & Daly. Therefore, we affirm the judgment of the trial court.

<u>FACTS</u>

Daly, a licensed attorney, has been practicing litigation in Indiana since 1987. In August 2007, Daly was contemplating leaving his partnership at Conour Daly. Daly had twenty years of litigation experience, which also included two years of specific experience in the area of construction site injuries. In September 2007, Daly attended a golf outing sponsored by the Indiana Trial Lawyers Association; Greg Laker, who was an equity partner at C&M, also attended. After the outing, Laker and Daly sat at a picnic table and spoke about the possibility of Daly coming to work at C&M.

2

After the meeting, Daly believed that Laker had made him an offer promising to pay him at least half (the "at least half" deal) of what he brought in, while Laker believed that he had told Daly that he thought Daly would make more money at C&M than he did at Conour Daly. At that time, Daly accepted no offer. Daly continued in his law practice at Conour Daly.

In early 2008, Daly decided to leave the Conour Firm and began discussing possible employment with four law firms: Wagner Reese & Crossen, Keller & Keller, Parr Richey Obremskey & Morton, and C&M. Of those four firms, none but C&M made Daly an offer. In January 2008, Daly contacted C&M to inquire as to whether C&M was still interested in discussing an employment relationship.

Daly and Laker then met at a tavern in Zionsville. Neither party mentioned the "at least half" deal. Rather, Daly asked Laker if C&M would pay him a $150,000 salary, and Laker responded that C&M could likely pay him $120,000. After the tavern meeting, Laker talked to the equity partners at C&M about the idea of Daly coming to work for C&M.

On February 7, 2008, the equity partners at C&M had a dinner meeting with Daly at the Hillcrest Country Club. At the meeting, Ira Levin, the managing partner, explained to Daly that associates were paid a salary and were eligible for discretionary bonuses. Another meeting to discuss Daly's compensation was held on February 13, 2008 between Daly, Levin, and Jerry Abramowitz; the three again discussed the compensation structure at C&M.

On February 14, 2008, C&M made Daly a formal offer, which Daly accepted. As an at-will associate at C&M, Daly received a salary of $120,000, enumerated benefits, and discretionary bonuses in 2008, 2009, and 2010. In 2008, Daly received a discretionary bonus of $11,000. In 2009, Daly was the responsible attorney on nine cases that generated $4,125,560 in fees; he received a discretionary bonus of $600,000. In 2010, Daly received a discretionary bonus of $175,000.

Throughout his tenure at C&M, Daly made several attempts to increase his bonuses. He believed that he should be receiving the "at least half" deal and his total compensation should equal at least half of the fees he brought in to C&M. Instead, C&M earned from Daly's cases in one year fees of approximately four times the total compensation paid to Daly during his tenure with the firm.

In January 2011, Daly left C&M and became a partner with Golitko & Daly. When he left C&M, Daly took twenty-four cases with him to Golitko & Daly. There were no written or oral agreements between C&M and Daly as to fee ownership or division of fees for uncompensated work in progress at the date of Daly's departure. Nor did Daly sign a noncompetition agreement. All of the clients in the twenty-four cases were told that they had the right to remain with C&M or to leave with Daly.

Many, if not all, of the clients had signed fee contracts with C&M that provided that C&M could retain an attorney's lien on the proceeds of a suit or settlement in the event of termination of their contracts with C&M. C&M did not file any attorney's liens

4

or make a claim against any client. Daly was aware of the fee contracts between C&M and its clients.

On May 27, 2011, C&M filed its complaint against Daly along with a request for a preliminary injunction to prevent Daly from distributing fees earned from any of the twenty-four cases. Daly filed his answer to the complaint and his request for a preliminary injunction, affirmative defenses, and counterclaim for declaratory judgment on June 1, 2011. In it, Daly alleged that C&M had breached its contract with Daly.

On August 5, 2011, Daly moved for partial summary judgment, arguing that the fee provisions in the C&M client fee agreements were controlling as to the division of fees between C&M and Daly. On September 9, 2011, C&M responded to the motion for partial summary judgment and moved to amend its complaint, which the trial court allowed. On September 16, 2011, Daly replied to support his partial summary judgment motion.

Daly then moved to amend his counterclaim on October 20, 2011, which the trial court allowed. In his amended counterclaim, Daly argued that C&M's failure to pay him the amount he believed he was due violated the Indiana Wage Payment Statute. On November 21, 2011, C&M answered Daly's amended counterclaim.

On December 15, 2011, C&M moved for summary judgment on its quantum meruit claim. On December 30, 2011, the trial court denied Daly's motion for partial summary judgment, and on May 21, 2012, the trial court also denied C&M's cross-motion for summary judgment.

On December 17, 2012, C&M once again moved to amend its complaint, which the trial court allowed. On January 16, 2013, Daly answered C&M's amended complaint and amended his counterclaim, which C&M responded to on February 8, 2013.

A four-day bench trial began on April 29, 2013. At trial, C&M sought a declaratory judgment concerning the distribution of the disputed fees, argued for a quantum meruit recovery against Daly for C&M's proportional share of the fees, and made a criminal conversion claim against Daly for his use of the disputed funds. Daly also sought a declaratory judgment concerning the distribution of the disputed fees. Additionally, he argued that C&M owed him $1.69 million for his breach of contract claim, an additional $3.38 million for his time under the Indiana Wage Payment Statute, and an additional $1.5 million for a criminal conversation claim plus treble damages and attorney fees.

On April 22, 2013, C&M filed its trial brief and requested findings of fact pursuant to Trial Rule 52(A). That same day, Daly filed his pretrial brief, and, on April 29, 2013, both parties filed proposed orders.

On August 2, 2013, the trial court issued its findings of fact and conclusions of law. The trial court found against Daly on his claim for breach of contract against C&M and also found against Daly for his claim under the Indiana Wage Payment statute. The trial court found against C&M regarding their criminal conversion claim.

6

Concerning C&M's quantum meruit claim, the trial court found that:

. . . .

16. Termination fee agreements in client contracts are enforceable for the purpose of determining what constitutes fair compensation to the terminated firm. However, C&M is attempting to enforce such termination provisions against Daly not the client . . . . In short, C&M has not pursued it[s] right of compensation under these provisions. Rather, it attests to abbreviate its collection efforts by collecting from Daly on a Quantum Meruit basis.

17. The real issue is not the reasonable value of the time expended but whether there is a claim against the Defendant's names herein on the basis that they have been unjustly enriched by the circumstances such that the defendants in this case have an obligation to pay, to C&M, the reasonable value for C&M's services in the 24 cases at issue.

18. Daly was not unjustly enriched to the detriment of C&M by taking the 24 contingency files with him when he left C&M. First, in each case the Client chose to continue in [a] relationship with Daly as their attorney upon his termination with C&M. Second, there was no agreement in place between Daly and C&M, very sophisticated parties to say the least, regarding what would happen in the event they parted ways. Third, the employment agreement between Daly and C&M did not include any covenants regarding non-competition or provision about ownership of files. Fourth, Daly was being paid a salary by C&M. However, it is also clear that C&M was very well compensated for the time of Daly and earned in one year, fees of approximately four time the total compensation paid to Daly during his tenure with the firm.

. . . .

24. It is a maxim of equitable relief that a litigant who seeks equitable relief must demonstrate that it has behaved equitably in its entitlement to such relief. Woodruff v. Indiana Family and Social Services Administration, 964 N.E2d 784, 792 (Ind. 2012). C&M notified Daly that it had "elected" not to pursue recovery of its fees from the clients under the clients' fee contracts, but was, instead, demanding a payment from Daly to C&M based upon a Quantum Meruit determination of the value of the services provided to the clients prior to Daly's and the clients' departure from C&M.

. . . .

7

27. Daly and Golitko & Daly, P.C. were not required to honor C&M's demand to escrow all attorney fees paid to successor counsel following the client's discharge of C&M as a matter of policy. Such a lien would impermissibly interfere with, and impose a chilling effect upon, the client's choice of representation. C&M could have properly perfected an attorney's lien on each case and could have intercepted the disbursement of funds in derogation of that mean, but they did not do this, instead demanding that all the fees be escrowed, not just the portion upon which they claimed an unperfected lien.

. . . .

34. By electing to pursue only Daly, Golitko and Daly, P.C., and Golitko Legal Group, P.C. on a Quantum Meruit basis, rather than asserting any claim directly against a former client, C&M necessarily restrict[s] its recovery to a potential money judgment against those Defendants it has chosen to pursue.

Appellants' App. p. 32-36.

The trial court found against C&M on its claims for quantum meruit compensation as a result of the fees generated on the cases that went with Daly when he left C&M.

C&M now appeals the denial of its quantum meruit claim.

DISCUSSION AND DECISION

I. Standard of Review

When the trial court enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. In re Visitation of M.L.B., 983 N.E.2d 583, 585 (Ind. 2013). We must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. K.I. ex rel J.I. v. J.H., 903 N.E.2d 453, 457 (Ind. 2009). We will set aside findings of fact and conclusions of law only if they are clearly erroneous, and due regard shall be afforded the

8

trial court to judge the credibility of witnesses. <u>M.S. v .C.S.</u>, 938 N.E.2d 278, 281-82 (Ind. Ct. App. 2010). A judgment is clearly erroneous when the record contains no evidence supporting the findings, the findings fail to support the judgment, or when the trial court applies an incorrect legal standard to properly found facts. <u>Id.</u> at 282. When applying the standard of review, we neither reweigh the evidence nor assess witness credibility and will consider only the evidence most favorable to the judgment. <u>Clark v. Crow</u>, 778 N.E.2d 835, 840 (Ind. Ct. App. 2002).

## II. C&M's Claim

At the outset, we address C&M's contention that the trial court erred in determining that C&M should have sought recovery from the clients in the twenty-four cases, rather than from Daly or Golitko & Daly. Insofar as the holding of the trial court suggested that C&M should have sued its clients to recover on their fee contracts, we agree that the trial court was in error.

While termination clauses that provide for an hourly rate in the event of a pre-contingency termination are "presumptively enforceable, subject to the ordinary requirement of reasonableness," in this case, the record does not show that the clients were advised that they might be liable for the hourly rate payment in their fee contracts. <u>Four Winds, LLC v. Smith & DeBonis, LLC</u>, 854 N.E.2d 70, 74 (Ind. Ct. App. 2006).

Here, it appears that the clients in the twenty-four cases were told that they could stay with C&M or leave with Daly but were not advised by either that this would trigger termination of their contract or liability for the termination hourly fee in the fee

9

agreement. Both C&M and Daly have asserted that the clients had no reason to believe that they immediately owed C&M a termination fee when they chose to continue representation with Daly. Appellant's Br. p. 32; Tr. p. 306. Further, Daly testified that he was unaware of whether or not the clients even signed a new contract with Golitko & Daly. When asked if any of the clients knew the ramifications of his changing firms and the fee result between the two firms, Daly responded, "I don't even know those ramifications." Tr. p. 389.

Under such circumstances, without evidence in the record to show that the clients were advised or aware that the original contract with C&M was terminated or that they might incur liability for the hourly termination fees in fee agreements, it is clear that C&M and Daly were in the best position to dispose of the issue of fees. In Galanis v. Lyons & Truitt, our Supreme Court held that:

> In a system of professional responsibility that stresses clients' rights, it is incumbent upon the lawyer who enters a contingent fee contract with knowledge of a previous lawyer's work to explain fully any obligation of the client to pay a previous lawyer and explicitly contract away liability for those fees. If this is not done, the successor assumes the obligation to pay the first lawyer's fee out of his or her contingent fee.

715 N.E.2d 858, 863 (Indiana 1999). Therefore, C&M is correct that it was limited to seeking quantum meruit recovery from Daly. When lawyers such as C&M and Daly do not resolve these agreements and take their factual dispute to the trial court, "they take their chances on the deal the trial court will cut for them." Id. at 864.

10

Turning to C&M's quantum meruit argument, C&M maintains that the trial court erred when it failed to apply the quantum meruit recovery rule established by Galanis, and contends that the trial court erred when it held that C&M had no right of recovery against Golitko & Daly, who possessed and comingled the disputed funds.

In Galanis, our Supreme Court stated that:

> "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Indiana Professional Conduct Rule 1.16 comment; see Matter of Lansky, 678 N.E.2d 1114, 1116 (Ind.1997); see also 7 AM.JUR.2D Attorneys at Law § 181 (1997). We assume that an agreement calling for a reasonable method of compensating a discharged lawyer may be enforceable according to its terms. Cf. RESTATEMENT (SECOND) OF CONTRACTS § 3777 (1981). . . . The conventional rule is that "[a]n attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee." 7 AM.JUR.2D Attorneys at Law § 181 (1997); accord Matter of Lansky, 678 N.E.2d at 1116; Kelly v. Smith, 611 N.E.2d 118, 122 (Ind.1993). As the Court of Appeals observed, "this rule strikes the proper balance by providing clients freedom in substituting counsel, prohibiting clients from being held responsible for attorney's fees not previously agreed to, and protecting an attorney's right to be compensated for services rendered." Galanis v. Lyons & Truitt, 698 N.E.2d 368, 372 (Ind.Ct.App.1998).

Galanis, 715 N.E.2d at 861.

C&M argues that the trial court should have applied the quantum meruit recovery rule in Galanis to its claim against Daly for the twenty-four cases he took with him when he left C&M. That rule stated that, in the absence of express written fee agreements providing otherwise, a lawyer retained under a contingent agreement fee contract but discharged prior to the contingency is entitled to recover the value of services rendered if

11

there is a subsequent settlement or award. Id. at 860. The trial court determined that, including Daly's hours while at C&M, C&M attorneys had contributed a total of 1,014.64 hours on the twenty-four cases in question, and C&M maintains that, under Galanis, it should be compensated for those hours.

However, in Galanis, our Supreme Court also noted that recovery under that rule was determined by quantum meruit, "an equitable doctrine that prevents unjust enrichment by permitting one to recover the 'value of work performed or material furnished if used' by another and if valuable." Id. at 861 (emphasis added). In that case, our Supreme Court determined that "[a]s applied to this case, if Lyons is not compensated for the useful work it performed on the Brown case, either Brown or Galanis is unjustly enriched." Id. (emphasis added). The Court continued on to discuss the dollar value to "offset the unjust enrichment." Id. (emphasis added).

Here, the trial court found that C&M did not meet its burden of showing that Daly was unjustly enriched to its detriment by taking the twenty-four contingency files with him to C&M. Appellant's App. p. 32. It found that 1) the clients had chosen to continue with Daly as their attorney upon his termination with C&M; 2) there was no agreement in place between Daly and C&M, sophisticated parties, regarding what would happen if they parted ways; 3) the employment agreement between Daly and C&M did not include any covenants regarding non-competition or provision about ownership of files; 4) while Daly was being paid a salary by C&M, C&M was very well compensated for Daly's

12

time, as it earned, in one year, fees of approximately four times the total compensation paid to Daly during his tenure with the firm. Id.

Daly believed that he was would be compensated under the "at least half deal" and thought he would receive one half the fees he generated for C&M. Instead, the trial court found that it was "clear that C&M was very well compensated for the time of Daly and earned in one year, fees of approximately four times the total compensation paid to Daly during his tenure with the firm." Appellant's App. p. 32-33. While C&M was entitled to make a shrewd deal for Daly's services, under these circumstances, we agree with the trial court that C&M has failed to prove that Daly was unjustly enriched and, therefore, C&M has failed to show that it is entitled to quantum meruit recovery.

The judgment of the trial court is affirmed.

BARNES, J., concurs, and CRONE, J., dissents with opinion.

13

# IN THE
# COURT OF APPEALS OF INDIANA

COHEN & MALAD, LLP,     )
     )
    Appellant-Plaintiff/Counterclaim     )
    Defendant,     )
     )
    vs.     )     No. 29A02-1308-PL-741
     )
JOHN P. DALY, JR., GOLITKO &     )
DALY, P.C. AND GOLITKO LEGAL     )
GROUP, P.C.,     )
     )
    Appellees-Defendants/     )
    Counterclaim Plaintiffs.     )

**CRONE, Judge, dissenting**

I respectfully dissent. While it may be true that C&M was "very well compensated" for Daly's time while he was a salaried associate at the firm, that compensation is simply irrelevant to C&M's quantum meruit claim for the 1000-plus hours that C&M's attorneys contributed to the twenty-four cases that Daly took with him to Golitko & Daly. Pursuant to *Galanis*, C&M should be compensated for the useful work that its attorneys performed on those cases, and it should be able to recover that compensation from Golitko & Daly, which possesses the disputed fees and otherwise

14

would be unjustly enriched by C&M's efforts. *See Galanis*, 715 N.E.2d at 862 ("[B]ecause the underlying theory of payment is quantum meruit, if there is no fault to be attributed to either the client or the lawyer, … the measure of the benefit conferred is what is received by the client, not what is expended by the lawyer. That amount is the portion of contingent fee equal to the total effort expended to achieve the contingency that is attributable to the predecessor's work.") (citation omitted). As such, I would reverse and remand with instructions to calculate the value of the C&M attorneys' work in accordance with *Galanis* and enter a corresponding judgment in favor of C&M and against Golitko & Daly.