David J. FITZPATRICK d/b/a David J. Fitzpatrick and Associates, Appellant–Cross/Defendant,

v.

KENNETH J. ALLEN AND ASSOCIATES, P.C., Appellee–Cross/Plaintiff.

No. 64A03–0811–CV–545.

Court of Appeals of Indiana.

Sept. 10, 2009.

Michael A. Wilkins, Brian J. Paul, Jenny R. Wright, Ice Miller, LLP, Indianapolis, In, Attorneys for Appellant.

Kenneth J. Allen, William Lazarus, Kenneth J. Allen & Associates, P.C., Valparaiso, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

John Hill was seriously injured during the course of a hospitalization. Several law suits arose out of this injury, including a products liability suit against pharmaceutical companies and a medical malpractice suit against Hill's physicians. Attorneys Kenneth J. Allen, David J. Fitzpatrick, and Mitchell Iseberg entered into a fee-sharing contract under which Fitzpatrick agreed to handle the products liability suit and Allen would handle the medical malpractice suit. Allen, Fitzpatrick, and Iseberg, with the approval of Hill and his wife, agreed that Allen would receive 50% of any attorney fees generated by the two suits and Fitzpatrick and Iseberg would split the other half. The clients later discharged Allen from the products liability suit shortly before it settled for a large sum of money, generating over two million dollars in attorney fees, which Fitzpatrick distributed to himself and Iseberg and did not share with Allen. Allen subsequently withdrew from the medical malpractice suit. During protracted litigation over the fees, the trial court repeatedly ordered Fitzpatrick to disclose the settlement amount. Ultimately, Allen filed a motion for default judgment against Fitzpatrick, which the trial court granted due to Fitzpatrick's disobedience of its discovery orders. The trial court later entered judgment in Allen's favor in the amount of $1,350,000, reflecting what the court believed to be 50% of the attorney fees. Fitzpatrick filed a combined motion to correct error and motion for relief from judgment, which the trial court denied. Fitzpatrick now appeals, raising a number of issues, which we restate as: (1) whether the trial court erred by entering default judgment against him, (2) whether the trial court erred by awarding contractual, rather than *quantum meruit*, damages, and (3) whether the trial court incorrectly calculated the damages to which Allen is entitled from Fitzpatrick under the contract. We conclude that the trial court did not abuse its discretion by entering default judgment against Fitzpatrick due to his contumacious disregard for the trial court's discovery orders and that neither case law nor the Indiana Rules of Professional Conduct entitle Allen only to *quantum meruit* damages rather than contractual damages. We further

conclude that, while the trial court did not err by calculating damages without a damages hearing, the trial court abused its discretion by failing to subtract from the attorney fees a sum that was paid to Lewis. We affirm in part and reverse in part.

### Facts and Procedural History

The relevant facts are as follows. In 1999, Hill was hospitalized for cardiac bypass surgery in Fort Wayne, Indiana. During the course of his treatment, Hill developed a condition known as Heparin Induced Thrombocytopenia II that necessitated the amputation of both legs and an arm below the elbow and caused multiple organ failures. Hill and his wife, Susan, retained attorney Neal Lewis, who helped them successfully settle their claims against the hospital.

Lewis was engaged in work related to products liability claims against pharmaceutical companies on behalf of the Hills, pursuant to a contingency fee arrangement, *see* Appellant's App. p. 131, when the Hills hired Illinois attorneys Fitzpatrick and Iseberg on November 19, 2001. Fitzpatrick notified Lewis that the Hills had retained him, and the Hills terminated Lewis's representation.

Fitzpatrick, who is not licensed to practice law in Indiana, contacted attorney Allen[1] about handling a medical malpractice suit in Indiana state court against Hill's physicians. Fitzpatrick, Iseberg, and Allen entered into a contract whereby they agreed that Fitzpatrick would handle a products liability suit for the Hills and Allen would handle the Hills' Indiana medical malpractice suit. *Id.* at 87. The Hills signed a retainer agreement with Fitzpatrick, Iseberg, and Allen, agreeing to pay the attorneys 33 1/3 % of any judgments or settlements in their law suits and approving the following fee-sharing agreement:

> [T]he Law Firm of David J. Fitzpatrick & Associates, Mitchell M. Iseberg and Kenneth J. Allen & Associates, P.C., will divide the Thirty-three and One-third Percent (33 1/3 %) fee, representing their division of work and responsibility from my suit or claim, in the following manner; Fifty percent (50%) to the Law Firm of David J. Fitzpatrick & Associates and Mitchell M. Iseberg and Fifty percent (50%) to the Law Firm of Kenneth J. Allen & Associates.

*Id.* at 88. Fitzpatrick, Iseberg, and Allen also signed this agreement. *Id.*

Fitzpatrick and Allen actively pursued their respective law suits for the Hills. Fitzpatrick filed a products liability suit on the Hills' behalf against various pharmaceutical companies in federal district court in Illinois and pursued discovery in that case. Meanwhile, Allen undertook a medical malpractice administrative claim against Hill's physicians, which included a successful appeal to this Court that allowed the Hills to proceed in their claim against the physicians. *See Csicsko v. Hill,* 808 N.E.2d 80 (Ind.Ct.App.2004), *trans. denied.*

In early June 2004, Fitzpatrick and Allen communicated regarding the prospect of settlement in the products liability case. Appellant's App. p. 156. Around that time, Fitzpatrick proposed adopting a different fee-sharing agreement, a proposal which Allen rejected on June 8, 2004. *Id.* at 163. The next day, the Hills sent a letter to Allen containing the following:

> Please be advised that effective immediately this will serve as our notification to

---

1. Unless otherwise noted, references throughout this decision to Allen refer generally to his law firm, Kenneth J. Allen & Associates, P.C.

you that we have terminated you and your firm as our legal counsel relative to the products action against the pharmaceutical companies responsible for the injuries suffered by us in this matter in December of 1999. Please note that this termination does not apply to the medical negligence action that you and your firm are prosecuting on our behalf in Indiana.

*Id.* at 164. Twenty days later, the federal court dismissed the products liability suit with prejudice because the parties settled the case. *Id.* at 165–66. The settlement was subject to a confidentiality agreement. *Id.* at 282.

Meanwhile, Lewis filed a complaint in late 2003 in Porter Superior Court against Fitzpatrick, Allen, Hill, and Conseco Life Insurance Company.[2] *Id.* at 125–30. Lewis's complaint alleged that Fitzpatrick tortiously interfered with his contract to represent the Hills and sought a lien for attorney fees against funds already collected and any future recovery in the Hills' products liability action, as well as other damages. *Id.* at 127–30. Lewis subsequently dismissed Allen as to any claims of tortious interference. Appellee's Supp. App. p. 1. Lewis served discovery on Fitzpatrick, seeking, in part, information about the total amount of the products liability settlement. *See* Appellant's App. p. 204. While that discovery was pending, the trial court held a telephonic conference, during which Conseco and Lewis asked that the amount of the settlement be disclosed. *Id.* at 173. On August 19, 2004, the trial court issued the following order requiring the disclosure of the settlement amount: "Defendants shall disclose all settlement amounts from the Illinois action on or before October 1, 2004, and the Court orders

all parties to whom such amounts have been disclosed to treat them as, and they hereby are, confidential[.]" *Id.* at 171. Conseco later moved to vacate the disclosure order because it had resolved its subrogation interest and no longer needed to know the amount of the settlement. *Id.* at 172–74. Fitzpatrick also filed a motion to vacate the disclosure order and a motion for leave to seek an interlocutory appeal. *See id.* at 210. Lewis and Allen opposed vacating the disclosure order, *id.* at 173, but Allen later withdrew his opposition, *id.* at 202. The trial court denied the motions to vacate the disclosure order and Fitzpatrick's motion for interlocutory appeal. *Id.* at 210. Allen then filed a cross-claim against Fitzpatrick, alleging that Fitzpatrick had unlawfully withheld attorney fees owed to Allen from the settlement. *Id.* at 213–30; *see also id.* at 342 (order granting Allen's motion for leave of court to assert a cross-claim).

On November 30, 2004, in response to a motion to compel filed by Lewis, *id.* at 204–05, the trial court again ordered Fitzpatrick to comply with discovery requests, *id.* at 242. After Lewis filed another motion to compel on December 10, 2004, the trial court ordered Hill to disclose the amount and location of settlement funds that had been released to him. Appellee's Supp.App. p. 3.

On December 30, 2004, because neither Fitzpatrick nor Hill had disclosed the settlement amount pursuant to the trial court's orders, Lewis filed a request for a default judgment for failure to obey discovery orders and failure to follow the Indiana Rules of Trial Procedure. Appellant's App. p. 253–56. Allen later joined in the request for a default judgment as to Fitzpatrick. *Id.* at 265–269. In Allen's

---

**2.** Conseco held a subrogation interest in the funds recovered in the products liability ac-

tion. Appellant's App. p. 172–73.

verified motion to join the request for a default judgment, he cited Fitzpatrick's failure to follow the trial court's August 19 order and asked that the court enter default judgment against Fitzpatrick on Allen's cross-claim. *Id.*

Upon the Hills' request, Allen's law firm withdrew its appearance for the Hills in the Lewis matter. *Id.* at 243, 270–72. Although the Hills informed Allen that their request that his firm withdraw as their counsel in the Lewis case would not affect his representation of them in the medical malpractice suit, Allen cited an irretrievable breakdown of the attorney-client relationship and withdrew as counsel in the medical malpractice case as well. *Id.* at 243, 273–75.

In April 2005, Lewis, Fitzpatrick, and the Hills entered into an agreed protective order and agreed to engage in mediation. *Id.* at 281. As a result of this agreed protective order, Fitzpatrick disclosed the amount of the products liability settlement to Lewis. *Id.* at 564. Mediation resulted in Lewis settling his claims for $600,000. *Id.* at 565. Upon Lewis's motion, the trial court later dismissed his claims against the defendants with prejudice. *Id.* at 351. The federal district court then released the attorney fees from the settlement to Fitzpatrick and the Hills. *Id.* at 294. Fitzpatrick, in turn, split the sum he received for attorney fees with Iseberg, resulting in Fitzpatrick and Iseberg each receiving a total of $1,050,000 in attorney fees from the products liability settlement. *Id.* at 566.

Meanwhile, in May 2004, Allen filed a motion to renew his request for a default judgment as to Fitzpatrick due to Fitzpatrick's failure to comply with the trial court's August 19, 2004, disclosure order. *Id.* at 286–88. The trial court denied the motion. *Id.* at 297.

In June 2005, Allen, as cross-plaintiff, served his own discovery on Fitzpatrick, requesting, among other things, disclosure of the amount of the settlement. *Id.* at 318. Upon Fitzpatrick's motion, the trial court stayed discovery pending a decision from this Court regarding whether to accept Fitzpatrick's interlocutory appeal from an order denying a motion to dismiss. *Id.* at 350. This Court denied Fitzpatrick's petition for an interlocutory appeal on December 19, 2005, and on February 15, 2006, Allen sent correspondence to Fitzpatrick asking that Fitzpatrick respond to his June 2005 discovery requests. *Id.* at 384. After Fitzpatrick did not do so, Allen filed a motion to compel Fitzpatrick to answer the discovery on March 6, 2006. *Id.* at 353–55. The trial court granted Allen's motion to compel and ordered Fitzpatrick to respond to the outstanding discovery on or before April 10, 2006. *Id.* at 389. When Fitzpatrick responded on April 10, 2006, his responses consisted of extensive objections and did not disclose the settlement amount. *Id.* at 390–407. Specifically, in response to the request for the disclosure of the settlement amount, Fitzpatrick wrote, "Objection, seeks to invade the attorney-client privilege. Additionally, the information is protected by the confidentiality agreement reached in the settlement of Hill's product liability case." *Id.* at 401.

Allen filed another motion for default judgment. In support of his request for default judgment, Allen argued:

Fitzpatrick's failure to properly respond to discovery requests in direct violation of at least 3 court orders to do so and after three motions for default judgment have been filed constitutes a willful refusal to cooperate with discovery and a willful disobedience of the orders of this Court; Fitzpatrick's conduct is prejudicial to the administration of justice and prejudicial to Allen & Associates. . . .

*Id.* at 411. The trial court held a hearing on the motion for default. During this

hearing and also in a motion filed with the trial court, Fitzpatrick indicated that he would disclose the settlement amount to Allen if so ordered by the court. *Id.* at 435–36, 440. However, on June 5, 2006, the trial court entered default judgment against Fitzpatrick. *Id.* at 60–63. The trial court explained its ruling as follows:

Prior to August 19, 2004, Allen made multiple discovery requests from Fitzpatrick regarding the amount of the settlement. On August 19, 2004, this Court ordered the parties to comply with the discovery request. The Order stated that the "defendants shall disclose all settlement amounts from the Illinois action on or before October 1, 2004." Allen has attempted to obtain the settlement amount from Fitzpatrick on multiple occasions after the Order was rendered. Then, in the eleventh hour, after Allen filed its third Motion for Default Judgment, Fitzpatrick answered the interrogatories but did so by objecting to the question regarding the settlement amount. Fitzpatrick objected to discloser [sic] of the settlement amount based upon relevancy and privilege. These objections were overruled by the aforementioned Order on August 19, 2004. In all respects, we are back to square one.

It is not necessary for this Court to dilute the efficacy of its discovery powers by allowing a party to force this Court to render duplicate orders to comply in hopes that the party will begin to take this Court seriously. Therefore, based upon this Court's discretion and Fitzpatrick's continued refusal to comply with this Court's discovery process, Allen's Motion for Default judgment is GRANTED.

*Id.* at 62–63.

Fitzpatrick subsequently disclosed that the products liability suit settled for $8,100,000. *Id.* at 469. Allen then filed a motion for entry of judgment, contending, "The sole issue remaining in this case is the amount of damages, and now that the aggregate settlement amount in the Illinois products liability action has been disclosed, those damages are liquidated." *Id.* at 472. The trial court entered judgment for Allen in the amount of $1,350,000, reflecting 50% of $2,700,000, which is 33 1/3% of the settlement amount. *Id.* at 64. Fitzpatrick filed a combined motion to correct error and for relief from judgment, which the trial court denied. 11/6/08 Hrg. Tr. p. 45; Appellant's App. p. 65. Fitzpatrick now appeals.

### Discussion and Decision

Fitzpatrick raises a number of issues on appeal, which we restate as: (1) whether the trial court erred by entering default judgment against him, (2) whether the trial court erred by awarding contractual, rather than *quantum meruit,* damages, and (3) whether the trial court incorrectly calculated the damages to which Allen is entitled from Fitzpatrick under the contract.

Fitzpatrick appeals the trial court's denial of his combined motion to correct error and Indiana Trial Rule 60(B) motion for relief from judgment based upon the default judgment entered against him. We review a trial court's denial of a motion to correct error for an abuse of discretion. *Shane v. Home Depot USA, Inc.,* 869 N.E.2d 1232, 1234 (Ind.Ct.App.2007). Likewise, we review the denial of a Trial Rule 60(B) motion for relief from judgment only for an abuse of discretion. *Ross v. Bachkurinskiy,* 770 N.E.2d 389, 392 (Ind.Ct.App.2002). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court or reason-

able inferences therefrom. *Shane,* 869 N.E.2d at 1234. In reviewing the court's ruling on these motions, we consider the standard of review for the underlying ruling, which in this case was the trial court's grant of Allen's motion for default judgment and imposition of damages. *Id.;* Appellant's App. p. 64.

## I. Default Judgment

 Fitzpatrick contends that the trial court erred by granting Allen's motion for default judgment. The decision whether to set aside a default judgment is given substantial deference on appeal. *Shane,* 869 N.E.2d at 1234. We will not reweigh the evidence or substitute our judgment for the judgment of the trial court. *Id.* Default judgments are not generally favored in Indiana, for it has long been the preferred policy of this state that courts decide a controversy on its merits. *Id.* Any doubt of the propriety of a default judgment should be resolved in favor of the defaulted party. *Id.* (citing *Coslett v. Weddle Bros. Constr. Co., Inc.,* 798 N.E.2d 859, 861 (Ind.2003), *reh'g denied* ). However, "[t]he trial court's discretion is broad in these cases because each case has a unique factual background." *Id.* (citing *Anderson v. State Auto Ins. Co.,* 851 N.E.2d 368, 370 (Ind.Ct.App.2006)).

 The trial court granted Allen's motion for default judgment due to "Fitzpatrick's continued refusal to comply with this Court's discovery process." Appellant's App. p. 63. Indiana's discovery rules are designed to "allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement." *Brown v. Katz,* 868 N.E.2d 1159, 1165 (Ind.Ct.App.2007) (quotation omitted). Discovery is intended to require "little, if any, supervision or assistance by the trial court." *Hatfield v. Edward J. DeBartolo*

*Corp.,* 676 N.E.2d 395, 399 (Ind.Ct.App. 1997), *reh'g denied, trans. denied.* However, when the goals of the discovery system are not being met, Indiana Trial Rule 37 provides the trial court with tools to enforce compliance. *Brown,* 868 N.E.2d at 1165 (citing *Hatfield,* 676 N.E.2d at 399). Indiana Trial Rule 37(B)(2) permits the trial court to sanction a party for its failure to comply with discovery orders by, among other things, entering a default judgment against the party. Trial Rule 37(B)(2) provides, in pertinent part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (A) of this rule . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . . (c) An order . . . rendering a judgment by default against the disobedient party[.]

Recognizing that the trial court had the discretion to enter default judgment against him pursuant to Trial Rule 37, Fitzpatrick points out that Indiana law prefers to give parties their day in court, "especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations." *Prime Mortgage USA, Inc. v. Nichols,* 885 N.E.2d 628, 649 (Ind.Ct.App.2008) (quoting *Charnas v. Estate of Loizos,* 822 N.E.2d 181, 185 (Ind.Ct.App.2005)). He contends that this matter involves each of these factors and that default judgment was not warranted. However, we have held that Trial Rule 37 does not require a trial court to impose a lesser sanction before dismissing an action or entering a default judgment, "especially where the disobedient party has demonstrated contumacious disregard for the court's orders." *Brown,* 868 N.E.2d at 1169 (quotation omitted). Such is the case here.

■ As the trial court observed in its 2006 order granting default judgment, Fitzpatrick had plenty of opportunity to disclose the settlement amount as ordered by the court, and he chose not to do so in spite of the trial court's determination in August 2004 that the information was discoverable:

> On August 19, 2004, this Court ordered the parties to comply with the discovery request. The Order stated that the "defendants shall disclose all settlement amounts from the Illinois action on or before October 1, 2004." Allen has attempted to obtain the settlement amount from Fitzpatrick on multiple occasions after the Order was rendered. Then, in the eleventh hour, after Allen filed its third Motion for Default Judgment, Fitzpatrick answered the interrogatories but did so by objecting to the question regarding the settlement amount. Fitzpatrick objected to discloser [sic] of the settlement amount based upon relevancy and privilege. These objections were overruled by the aforementioned Order on August 19, 2004. In all respects, we are back to square one.

Appellant's App. p. 62. On appeal, Fitzpatrick argues that he did not act with contumacious disregard toward the trial court's discovery orders because he was justified in objecting to disclosing the settlement amount in his April 2006 discovery responses. However, the trial court's August 19, 2004, order requiring disclosure of the settlement amount alerted Fitzpatrick that the evidence sought was discoverable. *See Brown,* 868 N.E.2d at 1169. And we have previously held that a trial court did not abuse its discretion in entering default judgment against a party who demonstrated disregard for the court's discovery orders by failing to adequately respond to the opposing party's discovery requests. *Rivers v. Methodist Hosps., Inc.,* 654 N.E.2d 811, 814 (Ind.Ct.App.1995) (affirming dismissal of suit because "[d]espite repeated requests and two court orders, [plaintiff] continually failed to adequately respond to the [defendants'] discovery requests"). Fitzpatrick failed to cooperate with the trial court's orders and participate in meaningful discovery. Given the trial court's earlier orders, Fitzpatrick's insistence that the evidence sought was not discoverable was in bad faith and in contumacious disregard of the trial court's discovery orders. *See id.* We cannot say that the trial court abused its discretion by entering default judgment against Fitzpatrick for his blatant disregard of the trial court's discovery orders.[3]

## II. Damages

■ Fitzpatrick contends that, even if the trial court did not err in entering a default judgment against him, the trial court erred in computing the damages owed to Allen. Generally, the computation of damages is a matter within the sound discretion of the trial court. *Berkel & Co. Contractors, Inc. v. Palm & Assoc., Inc.,* 814 N.E.2d 649, 658 (Ind.Ct.App.2004).

---

**3.** Fitzpatrick includes significant argument in his brief that he had merit orious defenses to the default judgment in support of his request that we grant relief from the judgment. He contends that his motion for relief from judgment was based "at least in part" on Indiana Trial Rule 60(B)(1) and (8). Appellant's Br. p. 47. We observe that Fitzpatrick made absolutely no mention of either of these provisions in his motion to the trial court. Appellant's App. p. 450–58. In any event, in order to obtain relief from a judgment on the basis of Indiana Trial Rule 60(B)(1), not only must a party show a merit orious defense to the judgment, the party must show "mistake, surprise, or excusable neglect." *See State, Dep't of Natural Res. v. Van Keppel,* 583 N.E.2d 161, 163 (Ind.Ct.App.1991), *trans. denied.* Given the basis for the trial court's default judgment—Fitzpatrick's disregard for the trial court's discovery orders—Fitzpatrick can show none of those things.

On appeal, we will not reverse a damages award unless it is based on insufficient evidence or is contrary to law. *Id.* Here, the damages stem from a breach of contract. "A party injured by a breach of contract may recover the benefit of the bargain." *Id.* "Construction of the terms of a written contract is a pure question of law for the court, and we conduct a *de novo* review of the trial court's conclusions in that regard." *Applegate v. Colucci,* 908 N.E.2d 1214, 1218 (Ind.Ct.App.2009) (quotation omitted).

### A. Entitlement to No Fees?

■ As an initial matter, Fitzpatrick contends that because Allen withdrew his representation of the Hills in the medical malpractice action without the Hills' consent and did not present evidence that he withdrew for cause, he is entitled to no portion of the attorney fees generated by the settlement. This proposition fails because it goes to the question of whether Fitzpatrick is liable for damages to Allen under their fee-sharing contract, an issue that was already decided by the default judgment. "[T]he effect of the default judgment is that the facts as alleged ... are deemed admitted." *Progressive Ins. Co. v. Harger,* 777 N.E.2d 91, 95 (Ind.Ct.App.2002) (quoting *Shoulders v. State,* 462 N.E.2d 1034, 1035 (Ind.1984)); *see also Teegardin v. Maver's, Inc.,* 622 N.E.2d 530, 533 (Ind.Ct.App.1993) (concluding that where there was a determination of default, "the issue of liability was foreclosed"). As Allen points out in his brief on appeal, his cross-claim against

Fitzpatrick alleged that "Allen and Associates has performed all obligations required of it under the contract" and that "Fitzpatrick settled Hill's products liability claim but has since failed and refused to remit to Allen and Associates its portion of the attorney's fees in violation of the ... co-counsel agreement entered into with Allen and Associates." Appellant's App. p. 215. Fitzpatrick's breach of contract has already been established by the default judgment, and Allen is entitled to recover the benefit of the bargain. *Berkel & Co. Contractors, Inc.,* 814 N.E.2d at 658. Having affirmed the default judgment, the issue on appeal is not liability; it is the amount of damages to which Allen is entitled.[4]

### B. Entitlement to Damages Under the Contract or Quantum Meruit Damages?

■ Fitzpatrick challenges the trial court's computation of damages, arguing that the trial court erred by awarding Allen contractual damages rather than *quantum meruit* damages. Fitzpatrick does not contend that the contract is ambiguous. Rather, he argues that pursuant to our Supreme Court's decision in *Galanis v. Lyons & Truitt,* 715 N.E.2d 858 (Ind. 1999), and Indiana Rule of Professional Conduct 1.5(e), the trial court improperly awarded Allen contractual damages.

#### 1. Galanis

■ Fitzpatrick argues that, pursuant to our Supreme Court's decision in *Galanis,* Allen is entitled only to *quantum*

4. Although whether Allen performed his portion of the contract is no longer at issue because of the default judgment, we observe that Allen's withdrawal from that case was the result of actions taken, in part, *by Fitzpatrick* that caused the breakdown of the attorney-client relationship. Namely, as settlement in the products liability suit neared, Fitzpatrick sought to change the terms of the fee-sharing agreement. After Allen refused, the Hills immediately fired him from that suit. Fitzpatrick then refused to disclose the case's settlement amount to Allen, forcing Allen to choose between seeking enforcement of the fee-sharing contract or continuing his representation of the Hills.

*meruit* damages. "Quantum meruit is an equitable doctrine that prevents unjust enrichment by permitting one to recover the value of work performed or material furnished if used by another and if valuable." *Galanis*, 715 N.E.2d at 861. We have previously explained that "[t]he existence of a valid express contract for services ... precludes implication of a contract covering the same subject matter. The rights of the parties are controlled by the contract and under such circumstances recovery cannot be had on the theory of quantum meruit." *Landis v. Brooks*, 637 N.E.2d 1365, 1367 (Ind.Ct. App.1994) (quotation omitted), *reh'g denied, trans. denied.*

In *Galanis*, an attorney who had entered into a contingency fee contract with a client was discharged by the client before the suit's completion. The client's subsequent attorney obtained a jury award after trial and reached a settlement on behalf of the client. Thereafter, the discharged attorney sought fees and expenses from the subsequent attorney. When the two attorneys failed to agree about the amount of fees owed to the discharged attorney, the discharged attorney sought payment from the client pursuant to their original contingency fee contract. On appeal, our Supreme Court held that the discharged attorney was entitled to a fee, but that the fee was limited to *quantum meruit* recovery rather than recovery under the contingency fee contract. *Galanis*, 715 N.E.2d at 861. As the Court explained, this "rule strikes the proper balance by providing clients freedom in substituting counsel, prohibiting clients from being held responsible for attorney's fees not previously agreed to, and protecting an attorney's right to be compensated for services rendered." *Id.* (quotation omitted).

Fitzpatrick contends that the *Galanis* ruling "means that a lawyer hired under a contingent fee contract but discharged prior to the contingency 'is limited to quantum meruit recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee.'" Appellant's Br. p. 26 (quoting *Galanis*, 715 N.E.2d at 861). He asserts that "[n]owhere in its opinion in *Galanis* did the Supreme Court indicate that its holding was in any way based on the fact that the feuding lawyers did not have a fee-sharing contract." *Id.* at 32. However, this ignores *Galanis's* express limitation of its holding. In fact, *Galanis* limits itself to situations "in the absence of express written fee agreements providing otherwise." *Galanis*, 715 N.E.2d at 860. Thus, *Galanis* is inapposite. Further, the policy considerations at play in *Galanis* are not implicated here. In no way does enforcing a fee-sharing contract between lawyers impact a client's right to discharge an attorney, hold clients responsible for unbargained-for attorney fees, or hinder an attorney's right to be compensated for services rendered. *Id.* at 861. *Galanis* and its policy considerations do not require us to ignore the terms of the fee-sharing contract.

### 2. Effect of Indiana Rule of Professional Conduct 1.5(e)

Fitzpatrick next argues that Indiana Rule of Professional Conduct 1.5(e) prohibits Allen from collecting more than *quantum meruit* damages because to allow Allen to recover under the fee-sharing contract gives him an unreasonable fee. Indiana Rule of Professional Conduct 1.5(e) prohibits the division of a fee among lawyers who are not in the same firm, unless:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

Here, Fitzpatrick, Iseberg, and Allen entered into the following written fee-sharing agreement:

> [T]he Law Firm of David J. Fitzpatrick & Associates, Mitchell M. Iseberg and Kenneth J. Allen & Associates, P.C., will divide the Thirty-three and One-third Percent (33 1/3 %) fee, representing their division of work and responsibility from my suit or claim, in the following manner; Fifty percent (50%) to the Law Firm of David J. Fitzpatrick & Associates and Mitchell M. Iseberg and Fifty percent (50%) to the Law Firm of Kenneth J. Allen & Associates.

Appellant's App. p. 88. The Hills and all three attorneys signed this agreement. *Id.* Thus, there is no question that the requirements of Rule of Professional Conduct 1.5(e)(2) were met. Fitzpatrick contends, however, that

> to permit Allen to recover a full 50% of the contingency fee from the settlement would ignore the fact that he shared less than 50% of the work and professional responsibility in the case that produced the settlement, and in turn permit Allen to violate not only the fee-division rule, but Allen's ethical obligation to collect no more than a reasonable fee.

Appellant's Br. p. 34.

▮ First, as our Supreme Court recently explained, the Rules of Professional Conduct "have limited application outside of the attorney disciplinary process." *Liggett v. Young,* 877 N.E.2d 178, 182 (Ind. 2007). The Preamble to the Indiana Rules of Professional Conduct provides:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer, nor should it create any presump-

tion in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability, but these Rules may be used as non-conclusive evidence that a lawyer has breached a duty owed to a client. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct.

Ind. Professional Conduct Preamble ¶ 20 (2009). In *Liggett,* our Supreme Court disapproved of language in previous decisions allowing for civil liability on the basis of the Rules of Professional Conduct. 877 N.E.2d at 183 (disapproving of statements to the contrary in *Trotter v. Nelson,* 684 N.E.2d 1150, 1153 (Ind.1997), and *Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 342 (Ind.1991)).

In any event, we disagree with Fitzpatrick that Allen's level of participation in the products liability suit renders the fee to which Allen is entitled under the terms of the contract contrary to the spirit of Rule of Professional Conduct 1.5(e). Here, Fitzpatrick and Allen agreed to represent the Hills in two suits arising out of

the same set of facts. The attorneys' arrangement called for Fitzpatrick to handle the Hills' products liability claim in Illinois and Allen to handle the Hills' medical malpractice claim in Indiana. At the time they entered into this fee-sharing contract, Fitzpatrick, Iseberg, and Allen had no idea whether both, only one, or neither of the suits would be successful. Thus, they agreed to divide the labor in order to pursue both claims. In light of this division of labor, the attorneys agreed to split any attorney fees generated by these cases such that Allen would receive 50% and Fitzpatrick and Iseberg would receive 50%. Appellant's App. p. 87–88. The flaw in Fitzpatrick's argument is that he focuses upon Allen's level of participation *in the products liability suit alone*. However, the proper way to view the duties required of Allen under the fee-sharing contract is not to examine what he did or should have done in the products liability suit by itself; rather, it is to recognize that the representation called for by the fee-sharing contract is of a broader scope encompassing both causes of action that arose from the same set of facts and allowing the attorneys to share the risk that neither, one, or both of the suits would generate any contingency fees.

The default judgment established that Allen performed his requisite portion of the representation. *See id.* at 215 ("Allen and Associates has performed all obligations required of it under the contract, diligently prosecuting the medical malpractice case in behalf of Hill from the pre-trial discovery stage to the empaneling of a Medical Review Panel Chairman to the litigation of the case in Steuben County Superior Court. Allen & Associates also successfully litigated the case in behalf of Hill on appeal before the Indiana Court of Appeals and the Indiana Supreme Court."). We agree with Allen that the arrangement between the attorneys creat-

ed a "rough proportionality of work since Fitzpatrick and Allen divided up their total responsibilities by case." Appellee's Br. p. 35. Further, there is no allegation that the total fee taken from the Hills pursuant to the contract—33 1/3%—was unreasonable. Enforcement of the fee-sharing contract does not contradict the spirit of either Rule of Professional Conduct 1.5(e)(1) or (3).

Fitzpatrick points to an Illinois case, *Hofreiter v. Leigh*, 124 Ill.App.3d 1052, 80 Ill.Dec. 319, 465 N.E.2d 110 (1984), for the proposition that to allow an attorney, hired on a contingency-fee basis, whose representation of a client ceases before the completion of the suit, to collect more than *quantum meruit* compensation violates the canons of professional ethics. He argues that Allen, like Hofreiter, "shar[ed] less than full workload" and should not be permitted to recover from the full contingency fee under the terms of fee-sharing contract. Appellant's Br. p. 34. First, *Hofreiter* is an Illinois case and deals with the application of the Illinois Code of Professional Responsibility. Further, Fitzpatrick overlooks an important distinction between *Hofreiter* and the case before us. In *Hofreiter*, the fee-sharing dispute arose from a single wrongful death action, and "an equal sharing of the work did not occur." *Hofreiter*, 80 Ill.Dec. 319, 465 N.E.2d at 113. To the contrary, here, as the default judgment established, Allen performed the work required of him under the parties' contract, which was, to the attorneys' estimation, 50% of the "work and responsibility" for the broader representation of the Hills in two distinct claims. Appellant's App. p. 88. And, as we have already determined, enforcement of this contract is not precluded by Indiana Rule of Professional Conduct 1.5(e). There is no error in this regard.

Because neither *Galanis* nor Rule of Professional Conduct 1.5(e) preclude the enforcement of the parties' contract, Fitzpatrick's claim that Allen is entitled only to *quantum meruit* damages fails.[5]

### C. Calculation of Damages

Fitzpatrick next challenges the trial court's calculation of damages. He contends that the trial court erred by failing to hold a damages hearing and by failing to subtract a sum paid from the fees generated by the settlement when calculating the damages owed to Allen under the fee-sharing contract.

### 1. Damages Hearing

 Fitzpatrick argues that the trial court erred by entering a damages award without holding a damages hearing.[6] His argument in this regard is based upon the contention that Allen is only entitled to *quantum meruit* damages, a fact-sensitive calculation. However, we have already determined that Allen is entitled to contractual damages. Under the contract, Allen is entitled to 50% of the attorney fees generated by the Hills' products liability and medical malpractice suits. Appellant's App. p. 87–88. Once the amount of the attorney fees was provided to the trial court, the amount of damages owed to Allen was readily identifiable. After a default judgment, the trial court is not required to hold a hearing if a hearing is not

necessary "to determine the amount of damages." Ind. Trial Rule 55(B). Instead, "where the action is for a sum certain and liquidated, the final judgment can be entered and no hearing on damages [is] necessary." *Stewart v. Hicks*, 182 Ind. App. 308, 395 N.E.2d 308, 312 (1979). The trial court did not err by entering a damages award without a hearing.

### 2. Improper Calculation

 Finally, Fitzpatrick argues that the trial court improperly failed to subtract the sum paid to Lewis from the total attorney fee generated from the settlement. We will reverse a trial court's calculation of damages in a breach of contract case when it is not within the scope of the evidence of record. *Coffman v. Olson & Co., P.C.*, 906 N.E.2d 201, 210–11 (Ind.Ct.App.2009), *reh'g denied.* "When injured by a breach of contract, a party's recovery is limited to the loss actually suffered." *Id.* at 210. The party "may not be placed in a better position than he or she would have enjoyed if the breach had not occurred." *Id.*

Here, the evidence before the trial court at the time it entered its damages award was that the products liability suit settled for $8,100,000. Appellant's App. p. 469–70. Further, the evidence showed that $600,000 of that amount had been paid to Lewis. 8/4/06 Hrg. Tr. p. 23.[7]

5. Having concluded that the appropriate measure of damages is not *quantum meruit* but rather the terms of the fee-sharing contract, it is of no moment that the amount of attorney fees to which Allen, Fitzpatrick, and Iseberg may ultimately be entitled from the medical malpractice suit cannot yet be determined.

6. Although the trial court's order entering the damages award provides that the court held a hearing on August 4, 2006, at which evidence of Allen's damages was heard and argued, Appellant's App. p. 64, the transcript of this hearing reveals that, instead, this hearing was

focused upon Fitzpatrick's motion to correct error, 8/4/06 Hrg. Tr. p. 4. On appeal, the parties agree that the trial court did not hold a damages hearing.

7. Allen himself informed the trial court of this payment amount to Lewis during the August 4, 2006, hearing, which was long before the trial court entered its damages award. 8/4/06 Hrg. Tr. p. 23. Thus, Allen's contention on appeal that this evidence was not before the trial court is puzzling. We reject Allen's characterization of this evidence as "new." Appellee's Br. p. 37.

Pursuant to the attorney fee contract with the Hills, 33 1/3% of $8,100,000, or $2,700,000, was attorney fees. Appellant's App. p. 88. Allen was entitled to 50% of the attorney fees generated by the suit. *Id.* The trial court entered a damages award in favor of Allen for $1,350,000, or 50% of $2,700,000, plus costs and interest. *Id.* at 64. This calculation of damages ignored that $600,000 of the attorney fees were paid to Lewis, thus reducing the attorney fees pot to be divided by Allen, Fitzpatrick, and Iseberg to $2,100,000.[8] This was error. We agree with Fitzpatrick that he and Iseberg should not shoulder this burden alone. Rather, since Allen receives "half of the fee-sharing contract's benefits, he ought to bear half of its burdens." Appellant's Br. p. 36–37. Thus, the correct calculation of damages owed to Allen under the contract was to begin with the amount of attorney fees left for Allen, Fitzpatrick, and Iseberg after the payment to Lewis and to divide that in half. $2,100,000 divided by two is $1,050,000. Therefore, Allen is entitled to $1,050,000. The record reflects that Fitzpatrick and Iseberg agreed to split their portion of the fees in half. Appellant's App. p. 566. Thus, Fitzpatrick and Iseberg are entitled to each receive $525,000.

Because Fitzpatrick, and not Iseberg,[9] received the funds from the federal district court, *see id.* at 294 (court order), 566 (Fitzpatrick affidavit providing, "That left $2 million to be distributed by the federal court to me"), Fitzpatrick was to distribute the attorney fees according to the terms of the fee-sharing contract, which provided that Allen was to receive half of the attorney fees and Fitzpatrick and Iseberg would split the remaining half. By keeping $1,050,000 for himself and giving the remaining $1,050,000 to Iseberg, *see id.* at 566, Fitzpatrick breached the terms of the fee-sharing contract. He thus owes $1,050,000 to Allen.

We affirm in part and reverse in part. We remand to the trial court to enter a new judgment ordering Fitzpatrick to pay damages to Allen in the amount of $1,050,000 plus costs and interest.

NAJAM, J., and FRIEDLANDER, J., concur.

---

8. We disagree with Allen's argument that Fitzpatrick had to plead the defense of set-off in his answer to Allen's cross-claim in order to raise this issue on appeal. Appellee's Br. p. 38–39. Set-off is "a counter-demand growing out of a transaction independent of the matter upon which plaintiff's complaint is based, and arising out of debt, duty, or contract, liquidated or not, held by the defendant at the time the suit was commenced." *Brindle v. Anglin*, 202 N.E.2d 279, 283 (Ind.Ct. App.1964), *trans. accepted on other grounds*, 246 Ind. 601, 208 N.E.2d 476 (1965). The fact of the payment to Lewis does not constitute a counter-demand independent of the matter upon which Allen's counter-claim was based, and therefore Fitzpatrick has not waived his present challenge to the calculation of damages by failing to raise the defense of set-off.

9. In fact, the distribution list from the district court's order does not list Iseberg. It thus appears that Iseberg did not enter his appearance in the products liability action.