**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT *PRO SE*:

**CHRISTOPHER KING**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JAMES A. GEIGER**
O'Koon Hintermeister, PLLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER KING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-PL-461 |
| | ) | |
| KAREN PATRICK, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David A. Shaheed, Judge
Cause No. 49D01-0906-PL-28957

**February 5, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Defendant Christopher King appeals the trial court's judgment against him for conversion. The trial court determined that King knowingly or intentionally exerted unauthorized control of Appellee-Plaintiff Karen Patrick's credit card. The record reveals that King, who once had Patrick's consent to use her credit card, continued using the card after Patrick told King to stop. King incurred $3516.65 in unauthorized debt on Patrick's credit account. The trial court ordered King to pay Patrick treble damages and attorney's fees, for a total award of $16,049.95. King argues that the trial court abused its discretion in admitting and excluding certain evidence at trial, and that it committed clear error in its findings of fact and conclusions thereon. King also challenges the trial court's calculation of damages. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In September of 2005, Patrick and her husband, Alan Thompson, invited King and his brother Charles to live at their home ("Patrick's home") because the brothers did not have place to live. King was a friend of Patrick's son and had frequently stayed at Patrick's home prior to moving in indefinitely.

King matriculated at Butler University in August of 2006. In October of 2006, Butler University notified King that he had outstanding financial obligations to the university and would be removed from school if they were not settled. Shortly thereafter, Patrick offered King the use of her Meijer MasterCard to pay his debt to Butler University. At the time the credit card was offered to King, Patrick's credit account had a balance of zero, and King agreed to pay the debt he incurred.

2

King first used the credit card on October 16, 2006. At some point thereafter, Patrick added King as an authorized user of the credit account, and a second Meijer MasterCard was issued in King's name. By this time, it was accepted that King could use the credit card at his discretion, so long as he paid the debt he incurred on the account. King used the credit card and made regular monthly payments toward the account balance for nearly two years.

In late May of 2008, King and Charles had a falling out with Patrick and Thompson, resulting in their eviction from Patrick's home. On May 27, 2008, Patrick sent the following email to King:

> You can come and get your stuff between 8-10 in the evening. …
> Please leave the cell phones and the keys to the van. I know that you will be responsible enough to pay off your debt with the credit card, no matter what someone may tell you. It would be a real good idea to also leave the card for I will have it suspended for use as soon as I can. You will also be removed from the auto insurance.

Ex. B. King did not return the credit card until late June of 2008. Between May 27, 2008, and King's return of the credit card the following month, King incurred approximately $1700.00 in debt on the account, increasing the account balance by nearly seventy percent. King ceased making payments toward the account balance in September of 2008.

On July 9, 2009, Patrick filed suit against King, alleging: Count I, breach of contract; Count II, breach of quasi contract; Count III, theft; and Count IV, conversion. A bench trial was held on March 28, 2013, at which Patrick appeared in person and by counsel, and King appeared *pro se*.

During trial, the parties disputed the admissibility of certain evidence as follows:

Select entries from Patrick's personal journal were admitted over King's hearsay objection; Patrick's credit card statements were admitted over King's objection to their redacted account numbers; a sample Meijer MasterCard application was excluded pursuant to Patrick's authenticity objection; and Patrick's and Charles's testimony concerning the circumstances surrounding King's eviction from Patrick's home was excluded pursuant to Patrick's relevancy objection. Additionally, the trial court cut short King's closing argument, asking King, "[i]n the interest of time," Tr. p. 255, to submit the final two pages of his scripted argument for later review.

On April 30, 2013, the trial court entered findings of fact, conclusions thereon, and final judgment in favor of Patrick on Count IV—conversion—and in favor of King on Counts I through III. In its order, the trial court established Patrick's actual damages as follows:

Conversion Claim:
Principal                          $1,711.60
Interest on Credit Card      $1,805.05
   Total Damages           $3,516.65

Appellant's App. p. 21. Pursuant to Indiana Code section 34-24-3-1, the trial court ordered King to pay Patrick treble damages and $5500.00 in attorney's fees, for a total award of $16,049.95. Where necessary, additional facts will be provided below.

**DISCUSSION AND DECISION**

### I. Whether the Trial Court Abused its Discretion in the Admission and Exclusion of Evidence

King argues that the trial court abused its discretion in admitting into evidence (1) Patrick's personal journal entries (2) and her redacted credit card statements, and in

4

excluding from evidence (3) the sample Meijer MasterCard application and (4) Patrick's and Charles's testimony concerning the circumstances surrounding King's eviction from Patrick's home. "We review a trial court's determination of admissibility for an abuse of discretion and will reverse only where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

## A. Patrick's Journal Entries

King claims Patrick's personal journal entries, as read into the record by Patrick, were inadmissible because Patrick failed to establish that she had insufficient knowledge as required by the recorded recollections exception to the hearsay rule. Ind. Evidence Rule 803(5). King also claims the entries' admission as an exhibit was in error because they were not offered by a party opponent, also as required by Rule 803(5). These claims are not without merit. *See Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir. 1998) (discussing the admissibility of personal journal entries under Federal Rule of Evidence 803(5)). Ultimately, however, we need not decide whether the trial court erred in admitting this evidence, as any such error would have been harmless.

"Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." *McClain*, 675 N.E.2d 329, 331-32 (Ind. 1996); *see* Ind. Trial Rule 61. In relevant substance, Patrick's journal entries evidenced that Patrick consented to King's use of her credit card prior to May 27, 2008; that Patrick revoked her consent on that date; and that King went on a spending spree thereafter. These facts were independently admitted into evidence by Thompson's testimony and Patrick's credit card statements, as well as several other exhibits not challenged by King. Reversal

5

is therefore not warranted on this issue.

## B. Patrick's Credit Card Statements

King claims Patrick's credit card statements were inadmissible because the account numbers listed thereon were redacted. Initially, we note that the admissibility of this evidence was the subject of a pre-trial joint stipulation, which covered "[a]ll credit card statements (and copies thereof) for Ms. Patrick's Meijer MasterCard account, at issue in this litigation, dated through June 28, 2008[.]" Appellee's App. p. 1. King contends he did not stipulate to the redaction of account numbers and that, without them, it cannot be determined which Meijer MasterCard account the statements reflect. The undisputed testimony, however, reveals that Patrick had "[j]ust the one" Meijer MasterCard account. Tr. p. 67. And at trial, Patrick independently authenticated the statements as those of her Meijer MasterCard account, on which, Patrick testified, King had incurred all of the debt and she has incurred none. The trial court did not abuse its discretion in admitting Patrick's redacted credit card statements.

## C. Sample Credit Card Application

With respect to the sample Meijer MasterCard application, King merely offers the peculiar assertion that this evidence was excluded before it could be admitted. By failing to support this claim with cogent reasoning and legal authority as required by Indiana Appellate Rule 46(A)(8)(a), King has waived this issue for appeal.

## D. Patrick's and Charles's Eviction Testimony

King claims Patrick's and Charles's testimony concerning the circumstances surrounding King's eviction from Patrick's home is admissible because those

6

circumstances are relevant to the issue of why Patrick revoked her consent to King's use of the credit card. "Relevant evidence" is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. We conclude that Patrick's motive for revoking her consent is not a "fact that is of consequence to the determination" of whether King exerted unauthorized control of Patrick's credit card after May 27, 2008. Ind. Evidence Rule 401. As irrelevant evidence is not admissible, Ind. Evid. R. 402, the trial court did not abuse its discretion in excluding Patrick's and Charles's testimony on this subject.

### E. King's Closing Argument

King claims the trial court abused its discretion in cutting short his closing argument. King, however, was allowed to present the remainder of his closing argument in writing and did not contemporaneously object to this procedure. Moreover, King does not support his claim with any legal authority; therefore, he has waived this issue for appeal. Indiana Appellate Rule 46(A)(8)(a).

### II. Whether the Trial Court Committed Clear Error in its Findings of Fact and Conclusions Thereon

King argues that the trial court clearly erred in finding or concluding that: (1) Patrick told King to stop using her credit card on May 27, 2008; (2) King used Patrick's credit card after that date and (3) was trying to "max out" Patrick's credit limit; and (4) King knowing or intentionally exerted unauthorized control of Patrick's credit card. "Findings are clearly erroneous only when the record contains no facts to support them

7

either directly or by inference." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). Conclusions are clearly erroneous if they are not supported by the trial court's findings. *Id.* "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." *Id.*

### A. Patrick's Revocation of Consent

King claims the record contains no facts to support the trial court's finding that, on May 27, 2008, Patrick told King "to cease using the Master Card." Appellant's App. p. 17. This claim has no merit. During discovery in this matter, in King's amended responses to Patrick's requests for admission, King admitted that "Ms. Patrick withdrew her consent [to use her MasterCard account] on May 27, 2008." Ex. J. In light of this evidence, the trial court's finding is not clearly erroneous.

### B. King's Unauthorized Use

King claims the record contains no facts to support the trial court's finding that King continued using Patrick's credit card after May 27, 2008. The record, however, reveals that approximately $1700.00 in debt was incurred on the account after that date, and Patrick testified that all of this debt was incurred by King. Patrick also testified that she never incurred any debt on the credit account and that she and King were its only two authorized users. In light of this evidence, the trial court's finding is not clearly erroneous.

### C. King's Attempt to "Max Out" the Credit Limit

King claims the record contains no facts to support the trial court's finding that King attempted to "max out" the credit limit on Patrick's account after May 27, 2008. We

8

disagree. The record reveals that King incurred approximately $1700.00 in debt after May 27, 2008, increasing the account balance by nearly seventy percent. Additionally, as we discuss below, there is evidence that King attempted to raise the credit limit on Patrick's account after May 27, 2008. In light of this evidence, the trial court's finding was not clearly erroneous.

### D. King's Attempt to Raise the Credit Limit

King claims the record contains no facts to support the trial court's finding that King attempted to raise Patrick's credit limit. Thompson, however, testified that in June of 2008, "We received a letter stating that our recent request to raise the spending limited [sic] had been declined." Tr. p. 96. Thompson further testified that neither he nor Patrick had requested an increased credit limit on Patrick's account. Because King was the only other authorized user of the account, the trial court could reasonably infer that King requested the increase. Its finding, therefore, is not clearly erroneous.

### E. King's Knowing or Intentional Use

King claims the trial court's findings do not support its conclusion that King knowingly or intentionally exerted unauthorized control of Patrick's credit card. We disagree. As discussed above, sufficient evidence supports the trial court's findings that (1) Patrick told King to stop using her credit card on May 27, 2008; (2) King used the credit card after that date, and (3) he was trying to "max out" the credit limit on Patrick's account. We conclude that these findings support the trial court's conclusion that King knowingly or intentionally exerted unauthorized control of Patrick's credit card.

### III. Whether the Trial Court Erred in Calculating Patrick's Damages

King argues that the trial court erred in calculating Patrick's actual damages. "Generally, the computation of damages is a matter within the sound discretion of the trial court." *Fitzpatrick v. Kenneth J. Allen & Assoc., P.C.*, 913 N.E.2d 255, 264 (Ind. Ct. App. 2009). "On appeal, we will not reverse a damages award unless it is based on insufficient evidence or is contrary to law." *Id.* at 265.

At trial, Patrick offered into evidence a summary of damages, totaling $3516.65 and representing the principal debt incurred on the credit account after May 27, 2008, as well as the interest accumulated thereon. The trial court asked King if he objected to the admission of this evidence, and King replied, "I don't agree that it's accurate, but other than that, no objection." Tr. p. 49. King did not cross-examine Patrick on the accuracy of her damages summary, and, other than disputing that he made any charges after May 27, 2008, he did not present any evidence in contradiction to the summary's accuracy. Because the trial court' calculation of Patrick's actual damages is consistent with the unchallenged damages summary admitted at trial, we cannot say that the court abused its discretion.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, J., concur.